IRENE S. KRAVETZ, executrix,[1] vs. MERCHANTS
DISTRIBUTORS, INC.

Suffolk.   February 5, 1982. — October 7, 1982.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Contract,* Employment.  *Damages,* Breach of employment contract.

At the trial of an employee's action for breach of his employment contract,
the judge properly denied the employer's motions for a directed verdict
and for judgment notwithstanding the verdict, each of which was
based upon the contention that the contract was terminable at will as a
matter of law, where the evidence warranted a finding that the con-
tract was for a definite period of time, and where neither motion
stated the additional ground, as required by Mass. R. Civ. P. 50(a),
that, if the contract were terminable at will, there was no evidence of
breach of an implied covenant of good faith and fair dealing.
[460-461]
At the trial of an employee's action for breach of his employment contract,
evidence warranted a finding that reassignment of the employee from
duties as manager of one of the employer's stores to those of warehouse
manager was such a reduction of rank or material change in duties
from those called for by the contract as to constitute a breach of the
contract even though there was no reduction in pay or benefits.
[461-462]
At the trial of an employee's action for breach of his employment contract,
the judge's instructions to the jury which may have led them to con-
clude that, in the event they found that the contract was terminable at
will, the employer still had the burden of proving that it had good
cause to discharge the employee and that it had acted in good faith,
were error requiring reversal.  [462]
At the trial of an employee's action for breach of his employment contract,
the judge erred in instructing the jury that they might consider wages
lost by the employee in determining damages for breach of the con-
tract if they found that it was terminable at will. [463]

CIVIL ACTION commenced in the Superior Court on Au-
gust 18, 1975.

---

[1] The original plaintiff in this case, Herman Kravetz, is now deceased.

The case was tried before *Paquet*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Jeffrey S. Stern (Tina M. Traficanti* with him) for the defendant.

*Camille F. Sarrouf (John B. Flemming* with him) for the plaintiff.

O'CONNOR, J.  A Superior Court jury returned a verdict for the plaintiff's decedent, Herman Kravetz, in the amount of $82,812 on a count in his complaint alleging breach of an employment agreement.  The defendant, Merchants Distributors, Inc. (Merchants), appeals, arguing that the judge erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict.  The defendant also claims error with respect to certain evidentiary rulings and jury instructions.  We hold that the judge properly denied the motions for a directed verdict and for judgment notwithstanding the verdict, but that certain of the jury instructions were erroneous, requiring a new trial.  We do not reach the evidentiary issues.

We summarize the facts the jury could have found.  From 1947 until 1973 Herman Kravetz owned and operated Tanner City Tire Inc. (Tanner), in Peabody.  In 1973, he negotiated with Max Katz, Merchants' founder and chairman, the sale of Tanner to Merchants.  At that time Merchants owned and operated a wholesale and retail tire business, with the main store located in Boston and several branch stores located in the surrounding area.

In August, 1973, Tanner, Merchants, and Kravetz executed an agreement providing the terms of the sale, including an allocation of the purchase price to specified items, and providing for Kravetz's employment by Merchants as branch manager.  Paragraph 7, entitled "Employment Contract," and paragraph 8, entitled "Covenant Not to Compete," are set out in the margin.[2]  Kravetz worked as

---

[2] "7.  EMPLOYMENT CONTRACT:  Merchants agrees to employ Kravetz as Manager and consultant for its Peabody Branch, commencing on Sep-

the manager of the Peabody branch from September 1, 1973, to November 21, 1974, when Katz wrote Kravetz a letter advising him that, based on his performance as manager, he did not meet Merchants' requirements. The letter informed Kravetz that Merchants was "re-defining" his work assignments in order to match his ability to its requirements. He was assigned to a position in the warehouse with responsibility for all warehouse activities. The change in his responsibilities, the letter continued, would not affect

tember 1, 1973 with at least all the same fringe benefits as are other managers at the same salary level including, but not limited to life insurance benefits based on at least a twenty thousand dollar salary, a week vacation with pay during the month of December, 1973 and each summer.

"It is further agreed by Merchants and Kravetz, that Kravetz will be employed on the following basis:

"a. From September 1, 1973 to December 31, 1973 at a salary rate of $16,000 per annum and at the rate of $2,000 per annum as Expense reimbursement.

"7b. For the calendar year 1974 at a salary of $16,000 plus $2,000 as Expense reimbursement. If the Retail and Commercial Sales and Service (exclusive of Federal and Sales Taxes) for the first full calendar year 1974 exceeds $200,000, he will receive a commission of 2% on such sales in excess of $200,000. He will also receive 5% of net profit from said Branch operations before Federal Income Tax computations. This profit participation will apply to the calendar year January 1, 1974 to December 31, 1974 to coincide with Merchants' regular established accounting period.

"c. Second calendar Year of Operations — If Retail and Commercial Sales & Service the first calendar year exceeded $200,000 his salary the Second Year will be increased to $18,000 plus $2,000 as Expense reimbursement. Net Profit participation continues at 5% for the calendar year 1975.

"d. Third Year of Operations — If Retail and Commercial Sales & Service the preceding year exceeded $300,000 his salary for the third year will be increased to $20,000 plus $2,000 as Expense reimbursement. Net Profit participation continues at 5% for the calendar year 1976.

"e. Kravetz will receive a special bonus of $2,000 at the end of each calendar year of five (5) years commencing with January, 1974.

"8. Covenant not to Compete: If this transaction closes at the time hereunder specified, or at any adjourned date agreed upon in writing by Kravetz and Merchants, Kravetz agrees that he will refrain, directly or indirectly, from carrying on a business similar to that involved in this transaction within a radius of 35 miles for a period of five (5) years from the date of closing unless his employment is terminated for reasons other than cause."

his "pre-arranged earnings." On November 22, 1974, Kravetz rejected the reassignment and resigned. He brought this action in August, 1975.

1. *Motion for Directed Verdict and Judgment Notwithstanding the Verdict.*

Merchants' motions for a directed verdict and for judgment notwithstanding the verdict on the count alleging breach of the employment contract stated as grounds that "the contract of employment was terminable at will, as a matter of law, and (as a separate basis) the undisputed evidence is that the plaintiff voluntarily resigned." See Mass. R. Civ. P. 50 (a), (b), 365 Mass. 814 (1974). We consider these grounds separately.

A. The first stated ground was that the contract of employment was terminable at will as a matter of law. We conclude that the jury would have been warranted in finding that the contract of employment was for a definite period of time. Therefore, the motions on this ground were properly denied.

"Whether there is a contract for services for a definite period of time . . . depends upon all the attendant conditions surrounding the agreement, as well as upon its terms, when the latter are not specific and clear." *Maynard* v. *Royal Worcester Corset Co.*, 200 Mass. 1, 4 (1908). The terms of the agreement here with respect to duration of employment are neither specific nor clear. Therefore, it was proper for the jury to refer not only to the contract language but also to the attendant circumstances, including "the nature of the employment, . . . the prior negotiation, [and] the situation of the parties." *Mahoney* v. *Hildreth & Rogers*, 332 Mass. 496, 498 (1955). Reference in the contract to salary payable at a yearly rate, with distinct provisions concerning salary, commissions, profit sharing and bonuses and a provision for noncompetition for five years, set in the context of the sale of a business that Kravetz had managed for twenty-six years, would support a jury finding that the contract provided for employment for a definite time. *Id.* at 498-499. *Maynard* v. *Royal Worcester Corset Co.*, *supra* at 4-5.

Even if this contract were terminable at will, it impliedly contained a covenant of good faith and fair dealing. *Maddaloni* v. *Western Mass. Bus Lines*, 386 Mass. 877 (1982). *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659 (1981). *Fortune* v. *National Cash Register Co.*, 373 Mass. 96 (1977). Neither motion stated as a ground, as required by Mass. R. Civ. P. 50 (a), that there was no evidence of breach of such a covenant. The requirement that a party state each ground relied on is important, and failure to do so was a sufficient reason not to allow the motions. *D'Annolfo* v. *Stoneham Hous. Auth.*, 375 Mass. 650, 655 n.5 (1978). *Moy* v. *Jack Madden Ford Sales*, 4 Mass. App. Ct. 102, 107-108 (1976).

B. The second ground stated by the defendant was that "the undisputed evidence is that the plaintiff voluntarily resigned." We treat this as an assertion that the evidence would not have warranted a finding that Merchants discharged Kravetz.

The contract provided that Kravetz was to serve as branch manager of Merchants' Peabody store. There was evidence that the branch manager was responsible for directing and assisting the salesmen assigned to the branch and for directing the service department through the service manager. In performing these duties, a branch manager was required to acquaint himself with the major accounts, to initiate new account programs, to review account activity, to verify that all necessary paperwork was completed for new accounts, to supervise collections, and to approve price concessions. There also was evidence that in his "re-defined" role, managing the warehouse, Kravetz would not have had these responsibilities but would have been responsible for keeping inventory records, maintaining "sufficient product" to meet the branch requirements, and for all other warehouse activity, including receiving and shipping, processing of adjustments, maintaining an orderly warehouse area inside and outside the premises, and general housekeeping. There is nothing in the contract that indicates that the parties contemplated a change in the rank or nature of Kravetz's position as a branch manager.

As stated above, the jury would have been warranted in finding a contract of employment for a period of years. The jury would also have been warranted in finding that assignment of Kravetz to the warehouse constituted such a reduction of rank or material change in duties from those called for by the contract that the contract was violated even though there was no reduction in pay or benefits. *Miller* v. *Winshall,* 9 Mass. App. Ct. 312, 317-318 (1980). See Annot., 63 A.L.R.3d 539 (1975). The judge correctly denied Merchants' motions for a directed verdict and for judgment notwithstanding the verdict.

2. *Jury Instructions.*

Although the jury would have been warranted in finding that the contract provided for employment for a period of years, they also would have been warranted in finding that the contract of employment was terminable at will. A covenant of good faith and fair dealing on the part of the employer is implied in such a contract. The burden of proving bad faith or unfair dealing rests with the employee. See *Maddaloni, supra* at 881-882; *Gram, supra* at 670; *Fortune, supra* at 105-106. Although early in the charge the judge instructed the jury that Kravetz had the burden of proving that the defendant terminated the employment without cause, he did not explain the concept of bad faith or unfair dealing as established in *Fortune* and developed, subsequent to the trial in this case, in *Maddaloni* and *Gram.* He thereafter instructed the jury that Merchants had the burden of proving, as one of its affirmative defenses, that Kravetz did not perform as he agreed to. The two instructions were at best confusing. The jury may well have concluded, incorrectly, that Merchants had the burden of proving that it had good cause to discharge Kravetz and that the discharge was in good faith even though the employment was terminable at will. Merchants was entitled to a clear instruction on burden of proof. Its counsel properly objected that the judge's instruction incorrectly shifted the burden of proof to Merchants, but no corrective instruction was given. This was prejudicial error.

The judge charged the jury on damages that "[i]f you find that there was a breach of the agreement by Merchants and the loss of income that was arranged in this agreement included anything that he earned during the period from back in November of 1974 right up to this time, this very day, you can consider it as being a matter to consider, to take into account, in determining the amount in extent of his damages." We have implied an obligation of good faith and fair dealing in an employment contract terminable at will to prevent an employer from being unjustly enriched by depriving the employee of money that he had fairly earned and legitimately expected, but it was improper for the judge to instruct the jury here that they could consider lost wages if they found that the employment was terminable at will. *Maddaloni* v. *Western Mass. Bus Lines, supra* at 884. At the conclusion of the charge, counsel for Merchants objected that the charge "does not give . . . sufficient guidance to the jury about what the measurement of damages would be on the breach of contract . . . given the fact that there is an employment agreement terminable at will."[3] The judge gave a further instruction to the effect that damages for breach of contract are assessed to place the injured party in the same position he would have been in if the contract had been performed. Merchants' objection was not met by the further instruction. The evidence would not warrant a verdict of $82,812 if the employment was terminable at will.

The judgment for Herman Kravetz is reversed and the case is remanded to the Superior Court for a new trial.

*So ordered.*

---

[3] On several occasions during the charge the judge told the jury that the employment was terminable at will as a matter of law. Neither party objected to this erroneous instruction.