[No. D004138. Fourth Dist., Div. One. May 1, 1986.]

MICHAEL E. GRAY, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CIPHER DATA PRODUCTS, INC., et al., Real Parties in Interest.

COUNSEL

Richard W. Davis for Petitioner.

No appearance for Respondent.

Littler, Mendelson, Fastiff & Tichy, Alan S. Levins and Belinda D. Stith for Real Parties in Interest.

OPINION

BUTLER, J.—Michael E. Gray sued his former employer, Cipher Data Products, Inc., and supervisory employees for damages for wrongful ter-

mination of employment. The court sustained demurrers without leave to amend to his second, third, fourth and sixth causes of action. He seeks a writ of mandate to set aside the court's rulings. We shall hold the court erred as to the third, fourth and sixth causes of action, grant the writ as to those and otherwise deny relief.

We state the facts as pleaded in fashion most favorable to Gray.

Gray is a computer programmer. Cipher Data needed a programmer to set up a customer's service order/inventory management function. Cipher told Gray, upon his hiring, his job tenure "would be secure so long as his . . . work was satisfactory" in regard to his responsibility for the installation of the system. Gray was hired at a rate less than that typical for such a job. He was attracted by the challenge and the responsibility implied by reporting to a vice president.

Cipher gave Gray an employee booklet. It describes two types of termination of employment—voluntary and involuntary. Reasons for involuntary termination are inadequate performance, cause, reduction in force and failure to return to work after leave of absence. The booklet includes a Code of Conduct. Failure to uphold one's responsibilities is just cause for "verbal warning, written warning or immediate dismissal." Warnings are administered on a progressive scale calling for talks between the employee and the supervisor. Violation of provisions of the Code "may lead to progressive counseling or dismissal." Among these violations are "d. Refusal or willful failure to perform job duties, or intentional obstruction of others in the performance of their duties." Listed under that heading are two items:

"Disregarding orders of Supervisor pertaining to work.

"Insubordination."

A separate heading is "1. Performing personal work on Company time."

The booklet encourages employees to "speak up," telling them to discuss any problems with their supervisor or manager.

During his employment, Gray treated fellow employees with respect and courtesy and the customer service group accepted his reports, recommendations and his design, development and installation of the inventory management system. Marlene Revelen was Gray's immediate supervisor. Gray did not "speak up" to her and she did not meet and counsel with him about any problems.

During his employment, Gray never received any oral or written warning as to any misconduct. Some 14 months after his employment,[1] and on September 17, 1984, Revelen submitted a performance report on Gray, marking him unsatisfactory as to achievement of goals, problem solving and decision making, working with people and development of subordinates and planning and organizing work. He was acceptable as to knowledge of job and fully acceptable as to affirmative action. The report stated Gray did not meet major job requirements.

The report included attachments expanding upon the reasons for Gray's unsatisfactory ratings. Attachment 3 notes his documentation and software analysis work was fully effective and thus his overall rating was acceptable. Attachment 7 says Revelen will continue "to clearly communicate expectations and standards of performance," Gray must make immediate progress in improvement of his performance to meet standards "which have been set forth" by Revelen and his failure to achieve significant progress "may lead to disciplinary action including termination of employment." The report includes a space for employee comments and the employee's signature.

September 18, 1984, the day following submission of the report, Jack Farnan, a personnel representative, told Gray to proceed with a formal response to the performance report, and to be available for a meeting the following day. Revelen did not object. September 19, at 4 p.m., Revelen told Gray he could not write his response on company time. Gray ceased writing his response and told Revelen he was finishing the comments as he was meeting with Farnan later. Revelen left Gray's cubicle without making any comment as to insubordination. Douglas Martini, Revelen's superior, then summoned Gray to his office and Revelen in Gray's presence told Martini she was terminating Gray for insubordination.

Vern Wiersma was Cipher's director of human resources and Farnan's supervisor. Contrary to Cipher practices, calling for Farnan to conduct an "exit" interview, Wiersma did so. He did not challenge Gray's dismissal and did not give Gray an opportunity to be heard and "inferred" his termination was justified because Gray did not seem to be popular with his superiors.

*Wrongful Termination*

The second cause of action alleges Gray's termination of employment was wrongful for several reasons. (1) His conduct in preparing the response

---

[1]Gray alleges in conclusionary terms he completed a probationary period but never received a probationary review and his annual performance review was postponed.

on company time was not insubordinate, (2) Cipher failed to follow the progressive procedure for dealing with misconduct as to severity and frequency and other dismissal procedures, (3) Revelen's conduct constituted sexual discrimination under Government Code section 12940, subdivision (a) because she postponed Gray's annual performance review, failed to cooperate with him, submitted a false performance report (the first cause of action pleads the report is defamatory) and unreasonably refused to permit Gray to complete his response to the report, (4) the discharge was retaliatory in violation of Government Code sections 12940, subdivision (f) and 12920, and (5) he was discharged for responding to a known false performance report in violation of Civil Code sections 45 and 45a.

Gray does not plead a written employment contract. He was an at-will employee (Lab. Code, § 2922). ■ The absolute power conferred by Labor Code section 2922 to discharge an at-will employee has been limited by a series of California cases: "Three distinct theories have been developed: (1) a tort cause of action for wrongful discharge in violation of public policy (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]); (2) a cause of action for employer's breach of the implied covenant of good faith and fair dealing, which sounds both in tort and contract (*Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443 [168 Cal.Rptr. 722]); and (3) a cause of action for employer's breach of an implied-in-fact covenant to terminate only for good cause (*Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311 [171 Cal.Rptr. 917])." (*Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 475-476 [199 Cal.Rptr. 613].)

■ Gray's first two grounds for claiming wrongful discharge are that his conduct was not insubordinate and Cipher did not follow prescribed procedures. These are not sufficient grounds for a claim of wrongful termination. ■ That tort is based on an employee discharge violating public policy. (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]; *Shapiro* v. *Wells Fargo Realty Advisors, supra,* 152 Cal.App.3d 467.) The discharge to be actionable on this theory must reflect a violation of a strong public policy; generally, violation of a statute must be involved, as when the discharge is because the employee would not violate the law, or when the discharge is retaliatory in violation of statutory restrictions. (See discussion in *Shapiro, supra,* at pp. 476-477; see also *Tameny, supra,* at pp. 177-179.) ■ The employer's violation of its own internal procedures and definitions of cause for discharge do not violate any strong public policy or statute.

The third alleged basis for wrongful discharge is sexual discrimination (Gov. Code, § 12940, subd. (a)) and the fourth is retaliatory discharge in

violation of Government Code section 12940, subdivision (b). Gray's pleading has no specific factual allegations suggesting sexual discrimination. He simply lists Revelen's actions in failing to cooperate, postponing his annual review, submitting a false report and refusing to allow him to complete his response, and affixes to them a sexual discrimination label.

The allegations of retaliatory discharge in violation of Government Code sections 12920 and 12940, subdivision (f) are totally without factual support. Gray simply asserts the termination was in violation of these sections without any alleged factual basis.

The remaining alleged statutory bases for wrongful discharge are claimed violations of Civil Code sections 45 and 45a arising out of his response to the false performance report on company time and his discharge for that reason. These sections define libel and libel on its face. The first cause of action sounds in libel. Apparently, Gray considers his response to the claimed libel is privileged and his discharge violates a right to be free from libel. The argument is without merit.

We conclude Gray has failed to state a cause of action for wrongful termination in violation of a public policy stated in a statute. The demurrer was properly sustained.

*Breach of the Implied Covenant of Good Faith and Fair Dealing*

■ *Cleary* v. *American Airlines, Inc., supra,* 111 Cal.App.3d 443, 453, declared there is an implied covenant of good faith and fair dealing in the employment relationship in that neither employer nor employee may do anything to injure the rights of the other. *Cleary,* a pleading case, held the length of an employee's service *together* with the expressed policy of the employer in providing specific procedures for adjudicating employee disputes acted as a form of estoppel, precluding the employee's discharge without good cause. (*Id.,* at p. 455.)

■ Gray incorporated in his third cause of action for breach of the covenant, the charging allegations as to defamation and wrongful discharge set out.in the first and second causes of action. He then pleads reliance on Cipher's good faith as well as on oral representations and the booklet and goes on to assert (1) the making of the response to the performance report was protected conduct, and his discharge by reason thereof was not insubordination, (2) Revelen's submitted false performance report, (3) the finding of cause to discharge and the disregard of disciplinary procedures—all constitute a breach of the covenant.

Thrashing about in this thicket of words is a cause of action for breach of the covenant. The booklet sets out Cipher's personnel policy and practices. The complaint pleads Cipher did not follow its policy of discussing grievances and implementing procedures to improve employee performance. Further, the booklet does not include an employee's performing work on his own time as a cause for discharge for insubordination; rather, the former infraction is a separate no-no listed under another section.

Whether the violation of the personnel policies and practices set out in the booklet is a breach of the implied covenant of good faith and fair dealing is a factual question, not an issue of law. (See, e.g., *Walker* v. *Northern San Diego County Hospital Dist.* (1982) 135 Cal.App.3d 896, 904-905 [185 Cal.Rptr. 617].)

Cipher argues the cause fails as a matter of law because Gray cannot show longevity of service as in *Cleary, supra,* 111 Cal.App.3d 443, and *Pugh* v. *See's Candies, Inc., supra,* 116 Cal.App.3d 311. ■ Although lengthy satisfactory service is extremely helpful to an employee in establishing breach of a duty of fairness toward him, that factor is not essential to the cause of action.

"We cannot agree with appellant that the factors relied on by the court in *Cleary* are the *sine qua non* to establishing a breach of the covenant of good faith and fair dealing implied in every employment contract. The cases subsequent to *Cleary* discussing the breach of the implied covenant in employment contracts have indicated that the theory of recovery articulated in *Cleary* is not dependent on the particular factors identified in that case. (*Shapiro* v. *Wells Fargo Realty Advisors* [(1983)] 152 Cal.App.3d [467,] at pp. 478-479 [198 Cal.Rptr. 361]; *Crosier* v. *United Parcel Service* [(1983)] 150 Cal.App.3d [1132,] at pp. 1137-1138.) To the contrary, a breach of the implied covenant of good faith and fair dealing in employment contracts is established whenever the employer engages in 'bad faith action extraneous to the contract, combined with the obligor's intent to frustrate the [employee's] enjoyment of contract rights.' (*Shapiro, supra,* 152 Cal.App.3d at pp. 478-479, citing *Sawyer* v. *Bank of America* (1978) 83 Cal.App.3d 135, 139 [145 Cal.Rptr. 623].) The facts in *Cleary* establish only one manner among many by which an employer might violate this covenant." (*Khanna* v. *Microdata Corp.* (1985) 170 Cal.App.3d 250, 262 [215 Cal.Rptr. 860].)

*Breach of Contract*

■ The fourth cause of action asserts Gray had an "oral and written contract" with Cipher. There is, of course, no written contract. The complaint simply states Gray accepted Cipher's offer of employment relying on

a representation his job tenure would be secure so long as his work was satisfactory. In similar allegations, a like claim was held barred by the statute of frauds as based upon an oral contract not to be performed within one year in *Newfield* v. *Insurance Co. of the West* (1984) 156 Cal.App.3d 440, 446 [203 Cal.Rptr. 9]. However, the Supreme Court has granted review of a case following *Newfield* on this point. (*Santa Monica Hospital* v. *Superior Court* (1985) 182 Cal.App.3d 878, review granted Jan. 16, 1986 (LA 32143).) Further, although decided in 1968, a Supreme Court case which has not been overruled holds the statute of frauds does not preclude enforcement of an oral employment contract which could theoretically be performed in less than one year, even where the employee's compensation was measured by the employer's annual receipts. (*White Lighting Co.* v. *Wolfson* (1968) 68 Cal.2d 336, 341 [66 Cal.Rptr. 697, 438 P.2d 345].) Similarly, *Plumlee* v. *Poag* (1984) 150 Cal.App.3d 541, 548 [198 Cal.Rptr. 66], states "[i]t is a well-established rule in California that an oral contract is invalid under subdivision 1 [of Civ. Code, § 1624] only where by its *very terms* it cannot be performed within a year from the date it is made. [Citations omitted.]" The *Plumlee* opinion also notes the statute of frauds has been interpreted "literally and narrowly" and applied only to contracts whose very terms preclude performance within one year. (*Ibid.*) Although the opinion in the *Santa Monica Hospital* case refers to these decisions as engaging in "semantic game playing" and "legalistic gymnastics" (182 Cal.App.3d at p. 885), the grant of review of that decision casts some doubt on its interpretation of the law. Given the uncertainty of present law in this regard, it is fairer, we believe, not to sustain the demurrer to the contract cause of action on a statute of frauds basis. Should the view expressed in *Newfield, supra,* 156 Cal.App.3d 440, applying the statute, ultimately become law, it will be easier to strike from any judgment Gray may recover the amount which rests on a contract basis than to require retrial of the matter on the contract theory, should the statute be found not to apply. Accordingly, the demurrer to the fourth cause of action should not have been sustained.

*Negligent Infliction of Emotional Distress*

■ The sixth cause of action incorporates the charging allegations of the first five causes of action. Gray fails specifically to allege any duty of care owed by Cipher to him and simply states Cipher breached a duty to exercise due care when dealing with him. That failure is said to result in emotional distress with resultant nausea, insomnia, and damages. While inartful, the allegations include the elements of the tort (*Windeler* v. *Scheers Jewelers* (1970) 8 Cal.App.3d 844, 850-851 [88 Cal.Rptr. 39] [emotional distress caused by negligent breach of bailment]; *Chelini* v. *Nieri* (1948) 32 Cal.2d 480, 481-482 [196 P.2d 915] [recovery for emotional distress for

failure to preserve remains of decedent]; *Allen* v. *Jones* (1980) 104 Cal.App.3d 207, 215-216 [163 Cal.Rptr. 445]).

The demurrer should have been overruled.

### *Disposition*

Further briefing or argument is unnecessary to determine the issue. Let a peremptory writ of mandate issue (Code Civ. Proc., § 1088; *United Nuclear Corp.* v. *Superior Court* (1980) 113 Cal.App.3d 359, 361 [169 Cal.Rptr. 827]; *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 697 [96 Cal.Rptr. 165]).

The writ is granted and the court is ordered to vacate its order sustaining the demurrer to the third, fourth and sixth causes of action and to overrule the demurrers to the third, fourth and sixth causes of action. In all other respects, the writ is denied.

Work, Acting P. J., and Lewis, J., concurred.