James N. HATFIELD, Appellant (Plaintiff),

v.

ROCHELLE COAL COMPANY, Appellee (Defendant).

No. 90–156.

Supreme Court of Wyoming.

July 15, 1991.

Bruce S. Asay, Cheyenne, for appellant.

Edward W. Harris, and Mary J. Chinnock of Holland and Hart, Cheyenne, for appellee.

Before URBIGKIT, C.J., and
THOMAS, MACY, and GOLDEN, JJ.,
and LEHMAN, District Judge.

LEHMAN, District Judge.

The United States District Court for the District of Wyoming certified to this court the following questions which arose during a suit concerning wrongful termination of employment. The stated questions are as follows:

## I.

Does Wyoming recognize a claim for breach of the covenant of good faith and fair dealing in the context of a wrongful termination action in which there is an employment contract?

## II.

Does Wyoming recognize a claim under Art. I, § 6 of the Wyoming Constitution when no state action is alleged?

We answer "no" to the first question and "no" to the second question.

## DISPOSITION OF CERTIFIED QUESTIONS

1. Duty of Good Faith and Fair Dealing in Employment Contract.

The Restatement (Second) of Contracts § 205 (1981) states as follows:

Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

■ The question is whether Wyoming law imposes this implied covenant of good faith and fair dealing upon an employer by virtue of his being a party to an employment contract. We hold that it does not.

Appellant, James N. Hatfield, correctly points out that we have adopted the covenant of good faith and fair dealing in situations where duties implied by law arise independently of the express terms of a contract. See *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855, 858 (Wyo.1990). However, this does not justify a presumption that the covenant applies to employment disputes. In fact, we have never applied it to a case in which there is alleged the wrongful termination of an employment contract.

We have held that the covenant does not apply to employment which is not "at-will." In *Leithead v. American Colloid Co.*, 721 P.2d 1059 (Wyo.1986), an employee sued his employer for wrongful termination, alleging that the terms of his employee handbooks had modified his at-will employment. We held that the specific terms and general tenor of the handbooks gave the employee an enforceable right to be discharged only for cause. *Id.* at 1063. With regard to his claim for breach of the implied covenant of good faith and fair dealing, however, we stated that "[t]he covenant has *no application here* * * * because the parties' contract was *not at will.*" *Id.* at 1064 (emphasis added).

Neither, have we recognized such a covenant when the employment is strictly "at-will." *See Ware v. Converse County School Dist. No. 2*, 789 P.2d 872, 875 (Wyo. 1990);[1] *McDonald v. Mobil Coal Produc-*

---

1. In *Ware*, 789 P.2d at 875, a case in which a school district failed to properly post notice of a job vacancy in accord with its intra-district transfer policy, we did apply a reliance theory under the Restatement (Second) of Contracts § 90(1) (1981). Section 90(1) provides as follows:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

It should be clear that this theory of reliance is not the same as the implied covenant of good faith and fair dealing, but may have served as a substitute for it in wrongful-termination cases

*ing, Inc.,* 789 P.2d 866, 869 (Wyo.1990); *Nelson v. Crimson Enterprises, Inc.,* 777 P.2d 73, 76 n. 3 (Wyo.1989) (specifically reserving the question); *Reese v. Dow Chemical Co.,* 728 P.2d 1118, 1121 (Wyo. 1986) (not addressing the question but noting its academic interest and future potential); *Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702, 704 (Wyo.1985); and *Rompf v. John Q. Hammons Hotels, Inc.,* 685 P.2d 25, 28 (Wyo.1984) (reserving the question and not applying the covenant to the facts in that case).

The language in the *Nelson* and *Rompf* cases suggests that we might apply this covenant in the context of wrongful termination under an employment contract, given the right case. Other states have either recognized or refused to recognize an implied duty of good faith imposed upon employment contracts in the interest of public policy. *See generally* Annotation, *Modern Status of Rule That Employer May Discharge At-Will Employee For Any Reason,* 12 A.L.R.4th 544 (1982). However, appellant has failed to convince us that the circumstances of his case make it "the right case" for adoption of the rule in this state. Thus, under the current status of Wyoming law, Wyoming does not recognize an implied covenant of good faith and fair dealing imposed upon an employer by virtue of his being a party to an employment contract.

2. Violation of Due Process in Absence of State Action.

■ The second certified question involves the construction of the Wyo. Const. art. 1, § 6:

No person shall be deprived of life, liberty or property without due process of law.

We must determine whether this language in the Wyoming Constitution requires due process where *private* action is taken that deprives a citizen of an interest in property.

We have implicitly recognized the requirement that state action be shown to activate Wyoming's due process clause. In

where we found injustice in the employer's

*Hanesworth v. Johnke,* 783 P.2d 173, 176 (Wyo.1989), we held that a district court's involvement in the process of extinguishing claims of creditors, who did not file timely claims against an estate, constituted state action sufficient to invoke the due process clauses of the United States and Wyoming Constitutions. However, we did not explicitly analyze the parameters of Wyoming's due process clause in *Hanesworth.* We did adopt the state action requirement and found it satisfied by the district court's involvement in that case. Appellant's arguments do not persuade us to deviate from or expand our holding in *Hanesworth.*

Appellant argues that, because we recognize some guarantees of the Wyoming Constitution as greater in scope than those of the federal constitution, we ought to extend the scope of the Wyoming Constitution's due process clause beyond that of the federal constitution to include some forms of private action. Our cases, recognizing a more extensive scope of rights under provisions of our constitution identical or very similar to those of the federal constitution, have involved rights of the individual vis-a-vis the state—not contentions between private parties. *See Simonds v. State,* 799 P.2d 1210 (Wyo.1990), Urbigkit, C.J., specially concurring (state double jeopardy provision may exceed scope of federal provision) and *Washakie County School Dist. No. One v. Herschler,* 606 P.2d 310, 332 (Wyo.), *cert. denied* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980) (equal protection analysis under Wyoming Constitution includes wealth as a suspect classification).

Appellant further argues that because the language of Wyo. Const. art. 1, § 6 is written in the passive voice ("[n]o person shall be deprived") and, therefore, the "depriving entity" is not specified, the framers intended to include private persons as well as the state. First, we note that private persons are not explicitly mentioned in Wyo. Const. art. 1, § 6. Second, appellant has not provided any legislative history or other pertinent authority which persuades

practices.

us that the framers of our constitution intended to include them by implication.

Other state courts which have considered this question have nearly unanimously held that private employers are not subject to due process claims under their state constitutions for wrongful termination of employees, because of the lack of state action. *See Dimond v. Samaritan Health Service,* 27 Ariz.App. 682, 558 P.2d 710, 711–12 (1976); *Schreiner v. McKenzie Tank Lines, Inc.,* 432 So.2d 567, 569 (Fla.1983); *Barr v. Kelso–Burnett Co.,* 106 Ill.2d 520, 88 Ill.Dec. 628, 478 N.E.2d 1354, 1356 (1985); and *Vavasori v. Commission on Human Relations,* 65 Md.App. 237, 500 A.2d 307, 310 (1985), *cert. denied* 305 Md. 419, 504 A.2d 1152 (1986).

The Alaska case, *Nichols v. Eckert,* 504 P.2d 1359 (Alaska 1973), is particularly on point. That case involved a challenge by nontenured teachers against a school board and superintendent for alleged breach of their employment contracts. The Alaska Supreme Court stated that its due process provision, nearly identical to Wyoming's, applies only when there is state action. *Id.* at 1362. We note that Alaska, like Wyoming, recognizes a broader scope for the equal protection clause of its constitution than that of the federal constitution, *see Breese v. Smith,* 501 P.2d 159, 167 n. 30 (Alaska 1972); but even that recognition does not extend to requiring due process of a private employer.

Appellant has cited no authority which convinces us that Wyoming's Constitution differs from every other state constitution and the federal constitution in requiring state action before the due process clause is implicated. Nor has appellant persuaded us to abandon or modify our holding in *Hanesworth.* We hold that our constitution does not require due process in the absence of state action.

Consequently, we answer the questions presented:

I.

Does Wyoming recognize a claim for breach of the covenant of good faith and fair dealing in the context of a wrongful termination action in which there is an employment contract?

NO

II.

2. Does Wyoming recognize a claim under Art. I, § 6 of the Wyoming Constitution when no state action is alleged?

NO

URBIGKIT, C.J., filed an opinion specially concurring in part and dissenting in part.

URBIGKIT, Chief Justice, specially concurring in part and dissenting in part.

I dissent from the majority's response to the first certified question. The majority misreads Wyoming case law, misapplies statutory and procedural rules for answering a certified question, and blurs the distinction between terminable at-will employment and employment under an implied contract which is not at-will. Consequently, the conclusion that Wyoming does not recognize a claim for breach of the covenant of good faith and fair dealing in an employment contract is incorrect.

The majority is correct that this court has not yet found "the right case" to impose the covenant of good faith and fair dealing to *create* an exception to a traditional at-will employment relationship. However, an implied employment contract that arises from an employee handbook or policy manual is, by definition, *already* an exception to at-will employment. *See Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702 (Wyo.1985). We have never expressly decided whether the covenant of good faith and fair dealing should apply to an implied employment contract which is not at-will. Thus, contrary to the majority, I believe this is a question of first impression before this court. We must determine whether the covenant of good faith and fair dealing should be recognized as a matter of law in an implied employment contract which is not terminable at-will.

The covenant of good faith and fair dealing is recognized and applied virtually everywhere else in the world of contractual relationships.[1] If you have a general principle, an exceptional reason should be provided to carve out an exception. While I find no justification for exceptional denial of good faith and fair dealing in *any* employer-employee relationship,[2] at the very least I would apply the covenant to an implied employment contract as presented in the first certified question.[3]

I agree with the majority's decision on the second certified question. The constitutional issue of due process under Wyo. Const. art. 1, § 6 is not created within the limited context of a private employment termination.

## I. COVENANT OF GOOD FAITH AND FAIR DEALING

### A. *Leithead v. American Colloid Co.*

The majority misunderstands what was decided in *Leithead v. American Colloid Co.*, 721 P.2d 1059 (Wyo.1986). The statement in the majority that "the covenant [of good faith and fair dealing] does not apply to employment which is not 'at-will'[,]'" does not apply to the issue determinatively presented here.[4] In *Leithead*, the court

---

1. Restatement (Second) of Contracts, § 205 (1981) states that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." This court has never expressly stated that every contract contains an implied covenant of good faith and fair dealing nor have we expressly adopted Restatement (Second) of Contracts, *supra*, § 205. *See Husman, Inc. v. Triton Coal Co.*, 809 P.2d 796 (Wyo.1991). However, in *Husman, Inc.* and *Four Nines Gold, Inc. v. 71 Const. Inc.*, 809 P.2d 236 (Wyo.1991), we discussed the covenant of good faith and fair dealing. Though the result in both cases turned on the fact that the alleged violations of good faith and fairness occurred *before* contracts were formed, the narrow holdings reinforce the proposition that the covenant *is* imposed once the parties to a contract have reached agreement.

   In my dissent in *Ware v. Converse County School Dist. No. 2*, 789 P.2d 872, 875 (Wyo.1990) (Urbigkit and Golden, JJ., dissenting), I argued that a jury should have the opportunity to determine whether Ms. Ware's employer violated her contractual rights under an implied covenant of good faith and fair dealing. *Id.* at 878. Similarly, Justice Golden implied in his dissenting opinion that he, too, would recognize the plaintiff's claim that she had been treated unfairly and that a question of fact remained whether the employer had breached its employment contract with Ms. Ware. *Id.* at 880.

2. It is my contention that the covenant of good faith and fair dealing should be extended to *all* employment relationships—including those which are at-will. A number of jurisdictions have adopted the implied covenant of good faith and fair dealing in at-will employment relationships, including: Alaska (*ARCO Alaska, Inc. v. Akers*, 753 P.2d 1150 (Alaska 1988)); Arizona (*Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 710 P.2d 1025 (1985)); California (*Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988); *Koehrer v. Superior Court (Oak Riverside Jurupa, Ltd.)*, 181 Cal.App.3d 1155, 226 Cal.Rptr. 820 (1986); *Gray*

   *v. Superior Court (Cipher Data Products, Inc.)*, 181 Cal.App.3d 813, 226 Cal.Rptr. 570 (1986)); Massachusetts (*Kravetz v. Merchants Distributors, Inc.*, 387 Mass. 457, 440 N.E.2d 1278 (1982); *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977)); Nevada (*K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364 (1987)); New Hampshire (*Cilley v. New Hampshire Ball Bearings, Inc.*, 128 N.H. 401, 514 A.2d 818 (1986); *Howard v. Dorr Woolen Co.*, 120 N.H. 295, 414 A.2d 1273 (1980); *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974)); and Oregon (*Wyss v. Inskeep*, 73 Or.App. 661, 699 P.2d 1161 (1985)).

3. A number of states have accepted the view that a covenant of good faith and fair dealing exists in implied-in-fact employment contracts, including: Alaska (*ARCO Alaska, Inc. v. Akers*, 753 P.2d 1150 (Alaska 1988)); Arizona (*Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 710 P.2d 1025 (1985)); California (*Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal. Rptr. 211, 765 P.2d 373 (1988)); Idaho (*Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 778 P.2d 744 (1989)); Illinois (*Martin v. Federal Life Ins. Co.*, 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998 (1982)); Nevada (*K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364 (1987) (extending tort liability to encompass a breach of the implied covenant)); New Jersey (*Noye v. Hoffmann–La Roche, Inc.*, 238 N.J.Super. 430, 570 A.2d 12, *cert. denied* 122 N.J. 146, 584 A.2d 218 (1990)); New York (*Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y. S.2d 232, 448 N.E.2d 86 (1983)); and Utah (*Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033 (Utah 1989)).

4. Unfortunately, *Leithead* has been relied upon erroneously in other cases. For example, in *Jimenez v. Colorado Interstate Gas Co.*, 690 F.Supp. 977, 982–83 (D.Wyo.1988), the court stated that "Wyoming does not allow claims for breach of the implied covenant of good faith in employment contracts that are not at-will. *Leit-*

*did not decide* that the covenant of good faith and fair dealing does not apply to an employment contract. Rather, because of the court's disposition of other issues, there was no need to resolve the question of applicability of the covenant.

This conclusion is obvious upon reading *Leithead* in its entirety and is further reinforced by the companion case of *Armstrong v. American Colloid Co.*, 721 P.2d 1069 (Wyo.1986). Both *Armstrong* and *Leithead*, decided by this court on the same day, involved co-employees challenging essentially identical employment termination issues. In *Armstrong*, we stated, "[b]ecause we agree with appellant that he could only be discharged for cause under his contract, and because we will reverse and remand on that basis, *we need not discuss his three alternative issues:* promissory estoppel, *the covenant of good faith*, and discharge against public policy." *Armstrong*, 721 P.2d at 1069 (emphasis added).

Thus, notwithstanding the *Leithead* quote in the majority, this court has never actually decided whether or not the covenant of good faith and fair dealing applies to an implied employment contract which is not at-will. This is a question of first impression and we find ourselves writing on a clean slate. *O'Brien v. State*, 711 P.2d 1144, 1147 (Wyo.1986).

B.  *The Certified Question*

W.S. 1-13-106 states:

The supreme court may answer questions of *law* certified to it by a federal court when requested by the certifying court if there are involved in any proceeding before the federal court questions of *law* of this state which may be determinative of the cause then pending in the federal court, and as to which it appears to the federal court there is no controlling precedent in the existing decisions of the supreme court.

(Emphasis added.)  W.R.A.P. 11.03 states:

A certification order shall set forth the question of *law* to be answered; and a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose.

(Emphasis added.)

In *Reliance Ins. Co. v. Chevron U.S.A. Inc.*, 713 P.2d 766 (Wyo.1986), this court answered a certified question from the United States District Court. Unlike the present case, the parties in *Reliance Ins. Co.* were in agreement as to the essential facts. Citing W.S. 1-13-106, we stated that "[o]ur role in certified question cases does not include fact finding." *Reliance Ins. Co.*, 713 P.2d at 769.

The majority's conclusion that this case is not "the right case" for adoption of the covenant of good faith and fair dealing in an implied employment contract is a finding of *fact*, not a determination of law. It is not our role to make findings of fact when answering a certified question. By deciding that "appellant has failed to convince us that the circumstances of his case make it 'the right case' for adoption of the [covenant] in this state[,]" the majority vio-

---

*head,* 721 P.2d at 1064." This is the same misapplication of *Leithead* replicated by the majority in this case.

Exactly the opposite result occurred in *Lesh v. Allstate Ins. Co.*, 723 F.Supp. 624 (D.Wyo.1989). In *Lesh,* the court stated:

The defendant has also moved for summary judgment against the plaintiff's claim for breach of the implied covenant of good faith and fair dealing. The cause of action *only* applies to an employment contract that *is not* at will, *Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702, 704 (Wyo.1985), and *was recognized* by the Wyoming Supreme Court in *Leithead v. American Colloid Co.,* 721 P.2d 1059 (Wyo.1986).

*Id.* at 628 (emphasis added). In *Lesh,* the court refused to impose the covenant of good faith and fair dealing since the plaintiff failed to demonstrate that his employment was something other than at-will. *Id.* It is implicitly understood in *Lesh* that the court would have imposed the covenant had the plaintiff shown evidence of an implied-in-fact employment contract.

The critical point in this comparison is that the aberrant results attributable to *Leithead* do not gain credence simply on the basis of repetitive citation. A fallacious statement does not become factual with age or frequent citation.

lates W.S. 1–13–106; W.R.A.P. 11.03; and our precedent in *Reliance Ins. Co.*

### C. *The Distinction Between Terminable At–Will Employment and Employment Under an Implied Contract Which is Not At–Will*

The certified question in this case asks: Does Wyoming recognize a claim for breach of the covenant of good faith and fair dealing in the context of a wrongful termination action *in which there is an employment contract.*

(Emphasis added.) In the federal court's statement of applicable facts, it states:

> The defendant [appellee Rochelle Coal Co.] has moved to dismiss, arguing that Wyoming does not recognize the covenant of good faith and fair dealing where employment *is not at will under the terms of the handbook.*

(Emphasis added.) Thus, for purposes of this certified question, the federal court accepts existence of an implied-in-fact employment contract created by terms in the employee handbook.

There are three generally recognized exceptions to traditional terminable at-will employment.[5] They are: (1) implied-in-fact contracts (the employer's right to terminate at-will is modified by such things as oral assurances, pre-employment statements, and employee policy manuals); (2) public policy exceptions (exceptions are identified to provide a remedy for termination when an employee is fired for acting in a way that is consistent with a recognized public policy; examples include employees fired for: whistleblowing, failing to commit illegal acts, and exercising statutory or constitutional rights); and (3) the implied covenant of good faith and fair dealing (applied when courts find that an employer breached the covenant and acted unfairly or in bad faith when terminating an at-will employee). *See* Chagares, *Utilization of the Disclaimer as an Effective Means to Define the Employment Relationship,* 17 Hofstra L.Rev. 365, 369–75 (1989).

This court has adopted the first two exceptions. In *Mobil Coal Producing, Inc.,* 704 P.2d 702, we recognized that an employee handbook can create circumstances which negate an employer's unfettered right to discharge an employee at any time and without cause. *See also Armstrong,* 721 P.2d 1069 and *Leithead,* 721 P.2d 1059.

In *Griess v. Consolidated Freightways Corp. of Delaware,* 776 P.2d 752 (Wyo. 1989), we answered a certified question from the Tenth Circuit Court of Appeals. In considering two employees whose at-will employment had been terminated for filing worker's compensation claims, we acknowledged that Wyoming provides a cause of action for retaliatory discharge on the basis of a violation of a strong public policy.

However, this court has left unresolved the question of whether Wyoming will adopt the third exception—imposing a covenant of good faith and fair dealing upon at-will employment relationships in the state. As suggested by the majority in this case, we said in *Nelson v. Crimson Enterprises, Inc.,* 777 P.2d 73, 76 n. 3 (Wyo.1989) and *Rompf v. John Q. Hammons Hotels, Inc.,* 685 P.2d 25, 28 (Wyo.1984) that we *may* impose the covenant in an appropriate case.

In addition to the procedural problem created by the majority's fact finding to answer a certified question, there is also a substantive problem with the majority's application of *Nelson* and *Rompf* to the facts in this case. Here we already have an implied-in-fact contract exception to at-will employment. We need not consider whether this is "the right case" to recognize the covenant of good faith and fair dealing in order to recognize the third exception of at-will employment. Rather, we must decide whether we accept the principle in the

---

**5.** For a concise history of the terminable at-will employment doctrine, see generally Comment, *Burk v. K–Mart Corporation: The Oklahoma Supreme Court Adopts a Narrow Exception to the Employment–At–Will Rule?,* 14 Okla. City U.L. Rev. 645, 647–48 (1989); Note, *Berube v. Fash-*

*ion Centre, Ltd.: Utah's Exceptions to the Employment–at–Will Doctrine,* 16 J.Contempt.L. 77, 78–80 (1990); and Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith,* 93 Harv.L.Rev. 1816, 1824–28 (1980).

Restatement (Second) of Contracts, § 205 (1981):

> *Every* contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

(Emphasis added.)

As I see it, "[e]very contract" encompasses all contracts—including those which are implied-in-fact. The alternative, as evidenced by the majority's response to the first certified question, is to carve out an unjustified exception to the good faith and fair dealing doctrine. Such an exception will leave implied-in-fact contractual employees entirely at the mercy of employers who are given immunity for their unfair and bad faith acts.

D. *The Covenant of Good Faith and Fair Dealing Should be Imposed on Employment Contracts Which Are Not At–Will*

I contend the correct response to the first certified question is "yes." It is time that we enter the Twentieth Century and recognize basic and universal contractual rights for employees.

I find the rationale set forth by Kansas Supreme Court Justice Herd, writing in concurrence in *Morriss v. Coleman Co., Inc.*, 241 Kan. 501, 738 P.2d 841, 851–52 (1987), persuasive:

> I think we should expressly adopt Restatement (Second) of Contracts § 205 (1979), which imposes a duty of good faith and fair dealing in the performance and enforcement of every contract including employment-at-will contracts. Employment contracts are the most sensitive of all contracts. They determine the standard of living and the quality of education for children, and affect the general welfare of all the people in this country. It is ludicrous that the covenant of good faith and fair dealing has been adopted pertaining to commercial transactions * * * but has not been adopted for transactions involving human working conditions.

There are many other reasons for recognizing the covenant of good faith and fair dealing in an implied-in-fact employment contract. Though not intended as an all-inclusive list, the following offers persuasive argument for recognition of the covenant in this context.

Wyoming has recognized the covenant of good faith and fair dealing in other settings.[6] For example, the Wyoming legislature imposed "an obligation of good faith" on every contract under the Uniform Commercial Code, W.S. 34.1–1–203. Also, in *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855 (Wyo.1990), this court found that an insurance company owes a duty of good faith to its policyholders not to unreasonably deny a claim for benefits under an insurance policy. Other courts have analogized the relationship between insurer/insured and employer/employee to conclude that the same covenant should be applied in the employment context as well. *See Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 252, 765 P.2d 373, 412 (1988), Kaufman, J., concurring and dissenting.

In addition to the courts, scholars have made the covenant of good faith and fair dealing the subject of much debate. Some have argued that employees can be victimized by the unequal bargaining status of their employers. *See* Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in*

---

**6.** For purposes of timely emphasis, I repeat, in part, my recent analysis in *Ware v. Converse County School Dist. No. 2*, 789 P.2d 872, 876 (Wyo.1990) (Urbigkit, J., dissenting), in which I stated:

> In *Reese v. Dow Chemical Co.*, 728 P.2d 1118, 1120 (Wyo.1986), this court harmonized jury findings after a trial court instructed the jury how to calculate damages for "breach of the implied covenant of good faith and fair dealing" despite the fact the court did "not address" appellee's cross-appeal issue that such a covenant is not recognized in Wyoming. But that harmonization seems to require tacit recognition of such a covenant. This court would presumably correct, under W.R.A.P. 7.05, a jury instruction which informed a jury how to calculate damages for breach of an implied covenant of good faith and fair dealing if no such covenant operated in Wyoming. *See Baird v. School Dist. No. 25, Fremont County*, 41 Wyo. 451, 458, 287 P. 308, 310 (1930).

*Good Faith*, 93 Harv.L.Rev. 1816, 1828 (1980) ("the relative bargaining power of the parties is so unequal that traditional contract assumptions are invalid"). Expanded job security created by imposition of the covenant may promote employee productivity and a more cooperative work environment. *Id.* at 1836. Several foreign countries, including Germany and Japan, have successfully abolished at-will " 'unjust discharges.' " *Id.* The requirement of "good faith" does not operate to forbid terminations for cause and does not unduly restrict an employer engaged in his course of business. *See* Comment, *Burk v. K-Mart Corporation: The Oklahoma Supreme Court Adopts a Narrow Exception to the Employment–At–Will Rule?*, 14 Okla. City U.L.Rev. 645, 653 (1989).

Though briefed by the parties in this case, the federal court did not certify a question as to whether or not Wyoming would make tort remedies available if the covenant of good faith and fair dealing was recognized in an employment contract. Consequently, this complex issue is left for future debate. *See Foley*, 254 Cal.Rptr. 211, 765 P.2d 373; *K Mart Corp. v. Ponsock*, 103 Nev. 39, 732 P.2d 1364 (1987); Cavico, *Punitive Damages for Breach of Contract—A Principled Approach*, 22 St. Mary's L.J. 357, 414–420 (1990); Jung and Harkness, *Life After Foley: The Future of Wrongful Discharge Litigation*, 41 Hastings L.J. 131 (1989); Miller, *Foley v. Interactive Data Corp.: The California Supreme Court Takes Uncertain Steps Toward Certainty in Wrongful Discharge*, 11 Whittier L.Rev. 595 (1989); Note, *Tort Remedies for Breach of Contract: The Expansion of Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing into the Commercial Realm*, 86 Colum.L.Rev. 377 (1986); and Note, *"Contort": Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing in Noninsurance, Commercial Contracts—Its Existence and Desirability*, 60 Notre Dame L.Rev. 510 (1985).

Finally, the majority's refusal in this instance to recognize the fundamental nature of good faith and fairness in *all* contractual relationships does not necessarily foreclose the United States District Court from applying the principle if warranted by the particular facts in this case. This was the case in *Rosales v. AT & T Information Systems, Inc.*, 702 F.Supp. 1489 (D.Colo. 1988). In *Rosales*, the federal court considered an at-will employee's claim that his employer breached an implied covenant of good faith and fair dealing. *Id.* at 1502. Though the court acknowledged that Colorado courts "do not recognize a cause of action for breach of an implied covenant of good faith and fair dealing in the employment context," that did not prevent the court from deciding that "none of these cases holds that an implied covenant of good faith and fair dealing cannot arise in an employment context." *Id.* at 1502. *See also Price v. Federal Exp. Corp.*, 660 F.Supp. 1388 (D.Colo.1987) [7] and Comment, *Continental Air Lines v. Keenan: Employee Handbooks as a Modification to Employment At Will*, 60 U.Colo.L.Rev. 169, 176 (1989).

If we assume to society something different than a pack of wolves tearing apart the carcass, supplemented by a flock of vultures devouring the remains, we should have no problem recognizing that it is of the essence of an implied-in-fact employment contract to include a duty of good faith and fair dealing in its performance and enforcement. There is no territory of

---

7. In *Price*, 660 F.Supp. at 1392–93, the court stated:

> Amid all of its incantations of good faith and promises of fair treatment, defendant [employer] now, surprisingly and quite boldly, asks me to grant summary judgment against plaintiff's [employee's] claim based on an implied covenant of good faith and fair dealing because plaintiff is a "mere" at-will employee who is owed nothing—not even fair treatment—and can be fired at the whim of the employer. I shall do no such thing. Employers must realize that if they are going to reap the profits and rewards of employee loyalty and enhanced workmanship which are coaxed by implied .promises made to the workforce, then such employers must be held to their word. Thus, plaintiff's claim for breach of an implied covenant of good faith and fair dealing survives the motion for summary judgment given the special facts of this case.

the law where the principles of good faith and fair dealing can be more appropriately employed than in the land of employer/employee relationships.

## II. DUE PROCESS

It is my conviction that in this majority's response to the second issue of constitutional due process, any answer should be confined to the actual subject of the litigation from which this certification is presented—namely, a wrongful termination action in which there is an employment contract. The law cited by the majority on that subject satisfies a proper certification response. I refuse, however, within this narrow factual situation, to attempt a generalized answer which may involve events and activities presently not identified or particularized. Specifically, I am completely unwilling to broadly suggest that "state action," whatever it may mean, is always a necessary requirement for effectuation of the right of the injured to be provided due process under Wyo. Const. art 1, § 6.

I note from Wyoming law that due process does not always mean judicial action. *State ex rel. Wyckoff v. Ross*, 31 Wyo. 500, 228 P. 636 (1924). The nexus of state involvement with private action, which may invoke due process rights, is an inquiry in broad context that should not be pursued here since the termination of the employment situation presented does not call for that character of examination. *See Sharrock v. Dell Buick–Cadillac, Inc.*, 45 N.Y.2d 152, 408 N.Y.S.2d 39, 379 N.E.2d 1169 (1978).

Providing more immediate persuasion and confining any answer to a specified transaction as a narrow basis of decision is the exhibited inability of the present members of the United States Supreme Court to agree on a definition of due process. As that inquiry recently related to punitive damages, we can find four separate concepts advanced by those jurists to define the essential nature of due process. *See Pacific Mut. Life Ins. Co. v. Haslip*, —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).[8]

---

8. For further confusion of due process, see generally *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988); Comment, *The NCAA and State Action: Does the Creature Control its Master?*, 16 J.Contempt.L. 333 (1990); Comment, *Constitutional Law—United States Supreme Court Finds NCAA Not State Actor Under Fourteenth Amendment—National Collegiate Athletic Association v. Tarkanian*, 488 U.S. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988), XXIII Suffolk U.L.Rev. 1124 (1989); and Note, *Constitutional Law—Enforcement of NCAA Sanctions by a Public Institution—Is There State Action by the NCAA? National Collegiate Athletic Association v. Tarkanian*, 488 S.Ct. 179, 109 S.Ct. 454, 102 L.Ed.2d 469 (1988), XXV Land & Water L.Rev. 281 (1990).