Hillsborough
No. 85-263

## RICHARD C. CILLEY

### v.

## NEW HAMPSHIRE BALL BEARINGS, INC.

August 7, 1986

*Anthony F. Simon*, of Manchester, by brief and orally, for the plaintiff.

*Sheehan, Phinney, Bass & Green*, of Manchester (*Michael C. Harvell* and *Charles C. Cornelio* on the brief, and *Mr. Harvell* orally), for the defendant.

KING, C.J. The plaintiff brought a wrongful discharge suit against the defendant, when he was forced to resign after having worked for the defendant for over thirty years. The Trial Court (*Wyman*, J.) granted defendant's motion for summary judgment on the ground that the plaintiff failed to properly plead that he was terminated either for doing something which public policy requires or for refusing to do that which public policy condemns. The plaintiff appealed. Since we find that the plaintiff's public policy allegation was sufficient, we reverse and remand for a trial on the merits.

Richard Cilley, the plaintiff, began working for the defendant, New Hampshire Ball Bearings, Inc. (the company) in 1947. In 1961, Cilley became manager of the company's Laconia Division, and in 1972, he became manager of the defendant's Micro Ball Division.

In September, 1979, Cilley instructed two of the company's employees to perform several hours of manual labor at his home, and to charge the company overtime for the work. Cilley claimed he was taking advantage of what he understood to be a long-standing company policy that employees could perform personal services for managers at company expense. Cilley's superior rebuked him for using company employees in this fashion. Cilley apologized, said he would not so use other employees again, and repaid the overtime wages to the company.

Several days later, after obtaining permission from a company official, Cilley borrowed a company truck to move bricks for his new house. He had an off-duty employee drive the truck, and he instructed the driver to unload the bricks and have the truck back before the morning shift. When Cilley realized that the driver would be late, he left instructions for two employees to help unload the truck. His supervisor learned of this, and Cilley was forced to resign.

The company has maintained throughout the course of this litigation that Cilley's failure to obey his superior and his misuse of company resources is the sole reason the company forced his resignation. Cilley has contended that a senior company official who wanted

"revenge" against him "fabricated a situation" to make him "look bad" and have him fired. Cilley maintained that the company official wanted revenge because Cilley outproduced the other official, the other official's efforts to discredit Cilley in the past had proved fruitless, and Cilley had refused to lie to the company president to cover for the other official.

Cilley commenced his wrongful discharge action in 1980. In 1984, the company moved for summary judgment on the ground that Cilley had failed to allege that his forced resignation contravened a specific public policy. After a hearing, the trial court denied the motion. The company filed a second motion for summary judgment, contending that the New Hampshire Department of Employment Security's denial of unemployment benefits for Cilley should act as *res judicata* in Cilley's wrongful discharge suit. This motion was apparently never acted on by the trial court.

The company filed a "Request for Interlocutory Transfer" to challenge the trial court's denial of its first summary judgment motion. In February, 1985, the trial court held a hearing on the company's interlocutory transfer request. At the hearing, the court instructed Cilley to consider amending his complaint to allege a violation of public policy. That same day, Cilley moved to amend his complaint, seeking to add the following:

> "That plaintiff was discharged because he performed an act or acts that public policy would encourage and/or that he refused to do that which public policy would condemn."

On February 25, 1985, the trial court denied the company's transfer request, granted Cilley's motion to amend, and *sua sponte* granted the company's first motion for summary judgment, which it had previously denied. The trial court ruled that even as amended, the plaintiff's complaint "failed to set forth either an act public policy would approve for which he contends he was discharged, or his refusing to perform an act public policy would condemn." The trial court subsequently denied Cilley's motion for reconsideration, and Cilley appealed.

This appeal raises two questions. First, does a trial judge have the power to grant, *sua sponte*, a motion for summary judgment which he had earlier denied? We hold that a trial judge has such power. Second, did the trial judge err in this case in ruling that the plaintiff, Cilley, had failed to allege a specific public policy contravened by his forced resignation? We hold that the trial judge did so err, and we reverse on that ground.

The plaintiff's first argument is that the trial court erred when, *sua sponte* and without notice, it reversed its earlier denial of the

defendant's motion for summary judgment and granted the motion. The plaintiff contends that he should have been afforded notice and an opportunity to be heard when the court reconsidered the motion for summary judgment. We disagree.

■■ We hold that the trial judge's decision was *procedurally* correct. The trial judge had the power to reverse, *sua sponte,* an earlier denial of a motion for summary judgment. *See Xerox Corp. v. Hawkes,* 124 N.H. 610, 475 A.2d 7 (1984) (after initially denying a motion for summary judgment, the trial court, *sua sponte,* vacated its denial, and granted summary judgment). Investing such power in the trial court is in keeping with the purpose of summary judgment, which is to "save time, effort, and expense, by allowing an immediate final judgment in those cases where there is no genuine issue of material fact requiring a formal trial." *Id.* at 620, 475 A.2d at 12. Further, the plaintiff was not denied a full opportunity to be heard, where a hearing was held on the summary judgment motion prior to the court's initial denial, and where the plaintiff was allowed to amend the pleadings before the court granted the motion.

The plaintiff's second argument on appeal is that the trial court erred in granting summary judgment for the defendant on the ground that the plaintiff failed to allege a specific public policy implicated by his forced resignation. The plaintiff contends that his public policy allegation was sufficient to withstand a motion for summary judgment. We agree.

■■ On a motion for summary judgment, "[t]he moving party has the burden to demonstrate that there is 'no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law.'" *Nash v. Keene Publishing Corp.,* 127 N.H. 214, 219, 498 A.2d 348, 351 (1985) (quoting RSA 491:8-a, III). The trial court should consider the pleadings, affidavits and other evidence on file in the case in the light most favorable to the party opposing the motion. *McElroy v. Gaffney,* 123 N.H. 58, 60, 457 A.2d 429, 430 (1983).

■■ We have long recognized wrongful termination as a cause of action by at-will employees against employers. *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974). "[A] termination by the employer of a contract of employment at will which is motivated by bad faith or malice or based on retaliation is not in the best interest of the economic system or the public good and constitutes a breach of the employment contract." *Id.* at 133, 316 A.2d at 551.

■ To maintain a wrongful discharge action the plaintiff must be prepared to show that he was "discharged because he per-

formed an act that public policy would encourage, or refused to do that which public policy would condemn." *Howard v. Dorr Woolen Company*, 120 N.H. 295, 297, 414 A.2d 1273, 1274 (1980). The public policy contravened by the wrongful discharge can be based on statutory or nonstatutory policy. *Cloutier v. A. & P. Tea Co., Inc.*, 121 N.H. 915, 922, 436 A.2d 1140, 1144 (1981). In most instances, it is a question for the jury whether the alleged public policy exists. *Id.* at 924, 436 A.2d at 1145. The issue of whether a public policy is implicated in an employee discharge should be taken from the jury only when the public policy's existence can be "established or not established as a matter of law. . . ." *Id.*

In the present case, we are unable to find as a matter of law that Cilley's termination did not involve a public policy. In an affidavit, which was before the trial court when it was considering the motion for summary judgment, Cilley alleged that his discharge was caused by another official's desire to get "revenge" against him. Cilley also contended that this official's desire for revenge grew in part from Cilley's earlier refusal to lie to the company president on the other official's behalf.

 We make no prediction regarding whether Mr. Cilley's version of his discharge will be believed by the jury in this case. However, we do conclude that Cilley has alleged sufficient facts which, if believed by a jury, could lead that jury to conclude that his termination resulted from acts that public policy would encourage. A jury could find, for example, that Cilley was discharged for refusing to lie and that public policy supports such truthfulness. As we noted in *Cloutier*, "The existence of a 'public policy' . . . calls for the type of multifaceted balancing process that is properly left to the jury in most instances." *Cloutier, supra* at 924, 436 A.2d at 1145. The present case is such an instance. *Accord Foley v. Community Oil Company, Inc.*, 64 F.R.D. 561 (D.N.H. 1974).

The company's argument that Cilley failed to allege a specific public policy rests in large part on its contention that the language Cilley added to his complaint when he was allowed to amend it, and which essentially parrots the public policy requirement language of *Howard*, is conclusory. When read in isolation, the language added to the complaint is conclusory. However, when the *Howard* language is read together with the other allegations made by Cilley in his affidavit, then the pleadings as a whole are sufficient to withstand a motion for summary judgment.

 The plaintiff argues in the alternative that the company's alleged policy of allowing managers to use company employees and resources for personal benefit amounts to "wages" for the purposes

of RSA chapter 275, "wages" which the company improperly "withh[e]ld or divert[ed]." RSA 275:48, I. The plaintiff contends that the company's firing him for his refusal to give up these improperly withheld "wages" violates public policy. We conclude that the argument has no merit. Even if one accepts, for the sake of argument, that use of company resources for personal benefit is a "wage" under RSA chapter 275 and that the "wage" was improperly withheld by the company, then Cilley is provided with remedies by the statute, remedies which do not include insubordination. RSA 275:53. *See Ives v. Manchester Subaru, Inc.*, 126 N.H. 796, 498 A.2d 297 (1985) (employee suit for unpaid wages); *see also Howard*, 120 N.H. at 297, 414 A.2d at 1274 (the proper remedy for unlawful age discrimination is provided for by statute).

*Reversed and remanded.*

All concurred.