USCA1 Opinion

 

 January 22, 1993 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1802 JOHN J. MACDONALD, Plaintiff, Appellant, v. TANDY CORPORATION, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Francis J. Boyle,* U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Higginbotham,** Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Andru H. Volinsky with whom Mary E. Davis, and Shaheen, ___________________ ________________ ________ Cappiello, Stein & Gordon, P.A. were on brief for appellant. _______________________________ Russell F. Hilliard with whom Ernest T. Smith, III, and Upton, ____________________ ______________________ ______ Sanders & Smith were on brief for appellee. _______________ ____________________ ____________________ _____________________ * Of the District of Rhode Island, sitting by designation. ** Of the Third Circuit, sitting by designation. HIGGINBOTHAM, Senior Circuit Judge. This is an appeal ____________________ from a grant of a judgment n.o.v. in favor of defendant, Tandy Corporation, and against plaintiff, John J. MacDonald. MacDonald was fired from his job as a sales-trainee at a store owned by Tandy in Manchester, New Hampshire because Tandy suspected that MacDonald had stolen money from the store's cash register. MacDonald brought an action against Tandy, alleging wrongful discharge under New Hampshire law. MacDonald claimed that Tandy fired him because he had cooperated with Tandy's theft investigation. Cooperation with an employer's theft investigation, according to MacDonald, is conduct protected by New Hampshire public policy. Therefore, MacDonald argued his firing was unlawful under New Hampshire law. The action went to trial before a jury in the United States District Court for the District of New Hampshire. The jury returned a verdict in MacDonald's favor in the amount of $101,000 damages. Tandy moved for a judgment n.o.v. and, in the alternative, a new trial. The district court granted Tandy's first motion, and entered a judgment n.o.v.. The court found that MacDonald had failed to show that his conduct was protected by public policy. The court also found that, even if MacDonald's conduct was indeed protected by public policy, MacDonald had failed to show that he was fired because of the protected conduct. MacDonald now appeals. Because we agree that MacDonald failed to show that he was fired because of conduct protected by New Hampshire public policy, we will affirm the district court's grant of judgment n.o.v. in favor of Tandy. I. John J. MacDonald (MacDonald), who had been employed by Tandy Corporation (owner of the Radio Shack stores) for six years, was working as a trainee at the Radio Shack store located in a shopping mall in Manchester, New Hampshire. On October 1, 1986, the store was closed at 9:43 p.m. by three Tandy employees, David Jesperson (Jesperson), Al Aikens (Aikens), and Shirley Cunningham (Cunningham). Jesperson, Aikens, and Cunningham left the store together. As they left, the three employees set the store's electronically controlled motion detection alarms. At 9:47 p.m., Eastern Alarm, telephonically monitoring the alarms from its offices in Portland, Maine, received a motion alarm emanating from the Radio Shack store. Eastern Alarm called the Manchester Radio Shack store by telephone but did not receive an answer. Eastern Alarm received a second motion alarm two minutes later. Eastern Alarm then called the Manchester Police Department which dispatched a police unit to the store. Eastern -3- 3 Alarm also called the store manager, Brad Ackerman (Ackerman), but was unable to reach him. Eastern Alarm therefore called MacDonald, the second person on the Radio Shack list of employees to be called. In response to the call, MacDonald left home and came to the Radio Shack store, arriving at approximately 10:35 p.m. In his work with Tandy Corporation, MacDonald had previously responded to over thirty such alarm calls. When MacDonald arrived, he was met by mall security personnel and informed that the doors to the store were secure and that it was safe to enter. MacDonald used a key supplied to him by the store manager and entered the store alone. He remained alone in the store for approximately fifteen minutes. MacDonald reset the alarm, put a few things in order for the next day, locked the front door, and left. On the morning of October 2, 1986, MacDonald also came in alone to open up the store for the day's business. MacDonald discovered $530.02, including $200.00 petty cash, missing from one of two cash drawers. He immediately notified Ackerman. MacDonald also informed Bill Hanlon (Hanlon), a loss prevention manager for Tandy Corporation, of the missing funds. The police arrived and questioned MacDonald. Later, both Ackerman and Hanlon arrived and began a separate interrogation. They questioned Jesperson, Aikens, Cunningham, -4- 4 and MacDonald individually. MacDonald stated that he did not observe, either on the evening of October 1, 1986 or the morning of October 2, 1986, when he opened the store, any signs of forced entry, with respect to the rear or front doors or the cash drawers. MacDonald also stated that he "did not notice if the cash drawer was open when he went to the store on the night of October 1, 1986." During MacDonald's questioning, the subject of taking a polygraph examination was raised. At trial, MacDonald testified that he understood that Tandy wanted him to take the polygraph and that Tandy planned to set up the polygraph exam. Further, MacDonald understood that he would lose his career with Tandy if he did not accede to the polygraph. On October 9, 1986, MacDonald went to the Manchester Police Department for the purpose of taking a polygraph examination with regard to the missing funds. Officer Anthony Fowler conducted the examination and scored it as a three chart cumulative total of -17 deceptive and two chart cumulative total of -10 deceptive. In substance, the conclusion was that MacDonald was not telling the truth. MacDonald informed Radio Shack personnel of the polygraph results. On October 21, 1986, the home office of Tandy issued orders that MacDonald was to be discharged. The reason for his -5- 5 separation was stated as follows: "failed to clear integrity investigation. See Loss Prevention Report and Manchester, New Hampshire Police Report for details." Tandy's Loss Prevention Report, prepared by Hanlon, noted the circumstances of the disappearance of the money and that MacDonald had failed to clear the polygraph test. As noted above, the action went to a jury trial, the jury returned a verdict in MacDonald's favor in the amount of $101,000 damages, and the defendant moved for a judgment n.o.v. The district court then certified the following question to the New Hampshire Supreme Court: Do the facts and circumstances of this action support a finding that public policy encouraged the action of the plaintiff, or does public policy condemn any action which the plaintiff refused to take in connection with the termination of his at-will employment by the defendant? After the New Hampshire Supreme Court declined to respond to this certified question, the district court granted the motion for judgment n.o.v.. The district court reasoned that the record failed to show that Tandy decided to terminate MacDonald's employment because he cooperated in Tandy's investigation of the missing funds. The court also reasoned that MacDonald's action in taking the polygraph was not in cooperation with an investigation being -6- 6 conducted by his employer but was rather in cooperation with an investigation being conducted by the Manchester Police Department. II. The district court had subject matter jurisdiction pursuant to 28 U.S.C. 1332. We have appellate jurisdiction prusuant to 28 U.S.C. 1291. In the First Circuit, a judgment n.o.v. is reviewed under the same standard as a directed verdict: [T]he evidence and all reasonable inferences extractable therefrom must be examined in the light most favorable to the nonmovant and a judgment notwithstanding the verdict should be granted only when the evidence, viewed from this perspective, is such that reasonable persons could reach but one conclusion. Veranda Beach Club Ltd. Partnership v. Western Sur. Co., 936 F.2d _______________________________________________________ 1364, 1383-84 (1st Cir. 1991). New Hampshire law recognizes a wrongful discharge exception to the common law rule of at-will employment as follows: [P]laintiffs must meet [a two-part test] to establish a wrongful discharge cause of action. First, the plaintiff must show that the defendant was motivated by bad faith, malice, or retaliation in terminating the plaintiff's employment. . . . Second, the plaintiff must demonstrate that he was discharged because he performed an act that public policy would encourage, or refused to -7- 7 do something that public policy would condemn. Cloutier v. Great Atlantic & Pacific Tea Co., 436 A.2d 1140, ________________________________________________ 1143-44 (N.H. 1981); accord Short v. School Admin. Unit No. 16, ______ ___________________________________ 612 A.2d 364, 370 (N.H. 1992) ("To support a claim of wrongful termination under State law, a plaintiff must establish two elements: one, that the employer terminated the employment out of bad faith, malice, or retaliation; and two, that the employer terminated the employment because the employee performed acts which public policy would encourage or because he refused to perform acts which public policy would condemn.") (citation omitted). Resolution of the second prong of this test, whether plaintiff's conduct for which he or she was discharged fell within the parameters of public policy, is usually a question for the jury: [T]he existence of a `public policy' also calls for the type of multifaceted balancing process that is properly left to the jury in most instances. . . . We believe it best to allow the citizenry, through the institution of the American jury, to strike the appropriate balance in these difficult cases. Cloutier, 436 A.2d at 1145. However, the jury's determination is ________ not entirely without bounds. "Although ordinarily the issue of whether a public policy exists is a question for the jury, at -8- 8 times the presence or absence of such a public policy is so clear that a court may rule on its existence as a matter of law and take the question away from the jury." Short, 612 A.2d at 370. _____ Even if the alleged conduct is determined to be protected by a public policy, a necessary element of the plaintiff's case is to prove that he or she was actually discharged because of such conduct. Thus, a causal link between the conduct established to be protected by public policy and the reason for the allegedly wrongful discharge is necessary to satisfy the second prong of the New Hampshire test. As the New Hampshire Supreme Court stated: [T]he plaintiff must demonstrate that he was discharged because he performed an act that _______ public policy would encourage, or refused to do something that public policy would condemn. Cloutier, 436 A.2d at 1144 (emphasis added). Where an employer ________ essentially penalized the employee for taking his regularly scheduled day off, the court found "a sufficient nexus between the public policy asserted by the plaintiff and the reasons for his discharge." Id. at 1141; see also Cilley v. New Hampshire __ ________ _______________________ Ball Bearings, Inc., 514 A.2d 818, 821 (N.H. 1986) (causation ____________________ element satisfied where plaintiff had alleged his termination resulted from refusing to lie and that public policy supports such truthfulness). -9- 9 In this case, we agree with the district court that there is no evidence on this record to demonstrate that the plaintiff was discharged because of conduct protected by a public policy. The specific public policy asserted by MacDonald as a justification for upholding the jury's verdict is that of "cooperation with an employer's theft investigation." Interpreted in the light most favorable to MacDonald, the record shows that MacDonald was suspected of stealing money from his employer, cooperated in the employer's investigation, was not cleared by the investigation, and was terminated. MacDonald was suspected of stealing the cash from Tandy because of the circumstances under which the money was taken from the store. MacDonald then cooperated with his employer's theft investigation, the result of which did nothing to dispel his employer's suspicions. We believe the district court drew the only possible interpretation from these facts when it concluded that MacDonald was dismissed because of the opportunity he had to steal the money and because he was not cleared by the subsequent investigation and not because he cooperated with his employer's theft investigation. What is missing from the record is any evidence to indicate that MacDonald was fired because he cooperated with the employer's theft investigation. -10- 10 Without such causal linkage, MacDonald cannot assert an exception to the at-will employment doctrine. We cannot accept MacDonald's suggestion that his cooperation with his employer's investigation immunizes him from the findings of the investigation. It would defy logic if an employee by reason of cooperation could be absolutely protected from the consequences of the facts the cooperation yields. While it may not be the best of business practice, a company is within its legal rights to fire employees on such slender evidence indicating the possibility of theft as is offered in the present case. See ___ Beery v. Maryland Medical Lab., Inc., 597 A.2d 516, 523-24 (Ct. _____________________________________ Md. Ct. Spec. App. 1991) (firing an employee on the basis of unsubstantiated allegations can hardly be said to contravene any clear mandate of public policy); Gillespie v. St. Joseph's Univ., _______________________________ 513 A.2d 471, 472-73 (Pa. Super. 1986) (discharge of an employee allegedly falsely accused of a crime of dishonesty not against a clear mandate of public policy). For the foregoing reasons, we will affirm the judgment of the district court. Affirmed. ________ -11- 11