376

Hillsborough-southern judicial district
No. 2012-599

LAWRENCE LEEDS

v.

BAE SYSTEMS

Argued: September 18, 2013
Opinion Issued: November 5, 2013

*Gawryl MacAllister & O'Connor*, of Nashua (*Jared O'Connor* on the brief and orally), for the plaintiff.

*Devine, Millimet & Branch*, of Manchester (*Daniel E. Will* and *Laurel A.V. McClead* on the brief, and *Mr. Will* orally), for the defendant.

HICKS, J. The plaintiff, Lawrence Leeds, appeals an order of the Superior Court (*Nicolosi*, J.) granting summary judgment to the defendant, BAE Systems (BAE), in this wrongful discharge action. We affirm.

The record supports the following facts, presented in the light most favorable to Leeds. Leeds worked for BAE as a quality control inspector from 2001 until his discharge in April 2009. Throughout his employment at BAE, Leeds was an "at-will" employee. On April 30, 2009, BAE discharged Leeds for violating the company's standards of conduct as a result of two separate incidents at the company's Hudson facility. Leeds represents that, prior to these incidents, he had never been involved in disciplinary action at BAE.

On February 17, 2009, BAE issued Leeds a "written warning" for engaging in "abusive" behavior toward another employee in violation of BAE policy. After interviewing Leeds, the employee, her supervisor, and another coworker who witnessed the incident, BAE determined that Leeds had "angrily approached" the employee about her work and, while pointing a finger at her, "yelled" obscenities. Leeds signed a form acknowledging receipt of the warning, but denied BAE's version of events. Specifically, Leeds wrote on the form that he "[d]ispute[d] swearing." Instead, Leeds maintains that he was doing his job by criticizing the employee for a deficient work product and admits only that his "voice level was a little bit higher" during the exchange.

The warning informed Leeds that his conduct was, in BAE's. view, a "major violation of MDP 22:20: Standards of Conduct" (MDP 22:20). In particular, BAE determined that Leeds had violated a provision against using "abusive or threatening language" toward a co-worker. The warning also gave Leeds a directive: "There must be an immediate and sustained improvement in your conduct in the workplace. Failure to do so will result in further disciplinary action up to and including termination of your employment."

Approximately three months later, Leeds was involved in an altercation that BAE determined was a second "major violation" of the same "abusive or threatening language" provision of MDP 22:20, which also applied to language directed toward "[a]ny other person on [BAE] premises." On April 28, 2009, while driving to work, Leeds passed a female driver as the road merged into one lane. The driver then tailgated Leeds, gestured obscenely at him, and followed him into the BAE parking lot even though she did not work there. After Leeds parked, the driver pulled up and stopped perpendicular to Leeds's car, blocking his path to the BAE facility. While remaining in her car, the driver "stuck her cell phone out of the window and pointed it at Leeds," purportedly to take pictures of Leeds's license plate. Leeds, who did not recognize the object as a cell phone and thought it may have been a weapon, swatted the phone away from his face, causing part of it to break. The two engaged in a shouting match involving obscenities for at least thirty seconds before Leeds was able, in his words,

to "squeeze" past the driver's car and enter the BAE facility. Leeds does not dispute that he swore at the driver and raised his voice during their exchange.

BAE conducted an internal investigation by obtaining a statement from the driver, interviewing both parties, and speaking with several BAE employees who had indirect knowledge of the incident. In an April 30 interview with a BAE investigator, which Leeds states lasted approximately five minutes, Leeds portrayed the driver as the aggressor, yet, according to the investigator, he acknowledged that he "got caught up in the moment."

Following her interview with Leeds, the investigator asked for Leeds to turn over his employee badge and to leave the premises. Upon the investigator's recommendation, a BAE management team made the decision to discharge Leeds that same day, after taking into account both the parking lot incident and the prior written warning. Leeds received notice of his discharge by telephone that day and by letter.

Leeds's discharge letter, dated April 30, indicated that he had committed a "major violation" of MDP 22:20 by (a) "engag[ing] in an altercation with an individual that involved abusive & threatening actions and language in the parking lot of the Hudson, NH, facility" and (b) "[d]isobeying [BAE] policies or proper instructions issued by [a] supervisor or other authority" in light of the written warning against using abusive language. The letter also stated that Leeds had violated BAE's "Workplace Violence Policy."

After an unsuccessful internal BAE appeal, Leeds sued BAE for, among other things, wrongful discharge. The trial court granted BAE's motion for summary judgment and denied Leeds's cross-motion for partial summary judgment. Leeds filed a motion for reconsideration, arguing in part that the court erred in its application of the summary judgment standard. In an order denying the motion, the court acknowledged that it "may have inadvertently drawn inferences more liberally in favor of the defendant than it should have." After reconsideration, the court again ruled that BAE was entitled to judgment as a matter of law. Leeds appeals the grant of summary judgment in favor of BAE.

Our standard of review is well established:

> When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the nonmoving party. If our review of the evidence does not reveal a genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision. We review the trial court's application of the law to the facts *de novo*.

*Lacasse v. Spaulding Youth Ctr.*, 154 N.H. 246, 248 (2006) (quotation omitted).

 The prevailing rule in New Hampshire is that, absent an agreement to the contrary, employment contracts are "at-will," meaning that "both parties are free at any time to terminate the employment relationship, with or without cause." *Porter v. City of Manchester*, 151 N.H. 30, 37 (2004) (quotation and brackets omitted). An exception to the "at-will" rule is that even at-will employees may pursue a cause of action in tort for wrongful discharge. *See id.* at 37-39. In order to succeed on a wrongful discharge claim, a plaintiff must establish two elements: (1) that the discharge was "motivated by bad faith, retaliation or malice"; and (2) that the plaintiff was discharged "for performing an act that public policy would encourage or for refusing to do something that public policy would condemn." *Karch v. BayBank FSB*, 147 N.H. 525, 536 (2002). "Although ordinarily the issue of whether a public policy exists is a question for the jury, at times the presence or absence of such a public policy is so clear that a court may rule on its existence as a matter of law, and take the question away from the jury." *Short v. School Admin. Unit 16*, 136 N.H. 76, 84 (1992) (citation omitted).

Leeds argues that the trial court erred in granting summary judgment in favor of BAE on each of the two wrongful-discharge prongs. Because we hold that the trial court did not err in granting summary judgment on the public-policy prong, we need not address the bad faith, retaliation, or malice prong. *See id.* at 78.

 Leeds argues that the trial court should have allowed a jury to determine whether public policy would encourage his conduct, which he characterizes as self-defense. As support for his argument, Leeds points to our case law recognizing that "[t]he public policy contravened by the wrongful discharge can be based on statutory or nonstatutory policy." *Cilley v. N.H. Ball Bearings, Inc.*, 128 N.H. 401, 406 (1986). Leeds argues that, if a public policy can be established on nonstatutory grounds, *see id.* at 406 (reversing summary judgment in favor of employer because a jury could conclude plaintiff was "discharged for refusing to lie and that public policy supports such truthfulness"); *Cloutier v. A. & P. Tea Co., Inc.*, 121 N.H. 915, 923 (1981) ("[W]ith or without the existence of [the Occupational Safety and Health Act of 1970, 29 U.S.C. § 654(a)], the facts before us support the conclusion that the plaintiff was discharged for furthering the laudable public policy objective of protecting the employees who worked under him."), "then surely pointing to a statute meets the employee's burden, especially on summary judgment." Here, Leeds relies upon RSA 627:4, which provides that self-defense is a justification for certain actions

that would otherwise be criminal. *See* RSA 627:4 (2007) (amended 2010, 2011). Because the trial court assumed that "whatever force . . . used [by Leeds] was appropriate," implying that it would fall under the self-defense statute, Leeds argues that public policy must support his "justified use of force."

We need not opine whether an employee's use of self-defense could ever constitute an act that public policy would encourage. Moreover, we need not determine whether Leeds could rely upon RSA 627:4 were he to face criminal charges. Rather, we hold that Leeds has failed to articulate a public policy that would encourage the conduct which led to his discharge.

Whether the other driver was the primary aggressor, and whether Leeds mistook the cell phone for a gun, are immaterial considerations. Even assuming, without deciding, that Leeds's contact with the cell phone was an act of self-defense in response to unprovoked aggression, the remainder of his conduct on company property was not self-defense. We therefore hold, as a matter of law, that public policy neither encourages Leeds's actions nor favors them over BAE's policy prohibiting abusive language and behavior in the workplace. *See Short*, 136 N.H. at 84-85 (holding, as a matter of law, that loyalty to one's supervisor "does not form the basis of a public policy because a countervailing public policy supports the [employer's] exercise of its employment and management responsibilities").

After examining all material facts in the light most favorable to him, we conclude that the trial court did not err in ruling that Leeds cannot show that public policy would encourage his actions. *See Lacasse*, 154 N.H. at 248. Because Leeds fails on the public-policy prong of his wrongful discharge claim, and both prongs are required in order to succeed, BAE is entitled to judgment as a matter of law. *Id.*

*Affirmed.*

DALIANIS, C.J., and CONBOY and BASSETT, JJ., concurred.