**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0055, <u>Scott Howe v. City of Nashua & a.</u>, the court on July 8, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  We affirm.

The plaintiff, Scott Howe (employee), appeals an order of the Superior Court (<u>Smukler</u>, J.) granting summary judgment in favor of the defendants, John Seusing and the City of Nashua (employer).  We construe his brief to argue that the trial court erred by:  (1) finding that the employer had not violated his due process rights under the New Hampshire Constitution when he was suspended with pay; (2) finding that the employer had not violated his due process rights under the New Hampshire Constitution when he chose to retire rather than face termination proceedings; (3) not finding that he was coerced to retire; (4) not finding that there was a genuine issue of material fact regarding whether he reasonably believed that "he would not receive an impartial review by the Commissioners"; (5) "inferr[ing] that [his] alleged misconduct could have been grounds for a termination"; (6) not finding that he had a property interest in his continued employment; (7) declining to "fashion a remedy for him"; and (8) finding that he had not been discharged for performing an act that public policy would encourage or for refusing to do something that public policy would condemn.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party.  <u>Pike v. Deutsche Bank Nat'l Trust Co.</u>, 168 N.H. 40, 42 (2015).  If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the grant of summary judgment.  <u>Id</u>.  A fact is material if it affects the outcome of the litigation under the applicable substantive law.  <u>Bond v. Martineau</u>, 164 N.H. 210, 213 (2012).  We review the trial court's application of the law to the facts <u>de</u> <u>novo</u>.  <u>Pike</u>, 168 N.H. at 42.

We address the employee's due process claims pursuant to the New Hampshire Constitution, and rely on federal law only to aid in our analysis.  <u>State v. Ball</u>, 124 N.H. 226, 231-33 (1983).  To the extent that the employee makes a due process claim pursuant to the Federal Constitution, the record does not demonstrate that he raised this claim to the trial court.  <u>See</u> <u>Town of Atkinson v. Malborn Realty Trust</u>, 164 N.H. 62, 69-70 (2012).

We first address the employee's argument that he was denied due process in June when his supervisor suspended him with pay. "'[T]he root requirement' of the Due Process Clause [is] 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (emphasis in original). In the case before us, when he was suspended, the employee had "an interest in receiving his pay, but that interest was minimally affected, if at all," Collins v. University of New Hampshire, 664 F.3d 8, 17 (1st Cir. 2011), by his two-month suspension with pay. Thus, he was not deprived of any property interest protected by due process. See id. (stating employee's two-month suspension with pay did not raise due process concerns); Loudermill, 470 U.S. at 544-45 (stating "where the employer perceives a significant hazard in keeping the employee on the job, it can avoid [due process issues] by suspending with pay").

Accordingly, we need not address the employee's arguments that: (1) the employer denied him due process by allegedly failing to follow its standard operating procedures when suspending him with pay; (2) his supervisor inveigled him into making inculpatory statements prior to suspending him; and (3) the alleged lack of due process attending his suspension rendered "meaningless" the protections available to him pursuant to RSA 105-C:4 (2013) were he to have chosen to go forward with the termination process.

We next address the employee's contention that he was denied due process in August when his supervisor informed him that he could retire or his supervisor would initiate termination proceedings before the police commissioners, in accordance with RSA 105-C:4, which provides that only the commissioners may "remove police personnel" and may do so only "for just cause and after a hearing satisfying the requirements of due process." We note that, although the employee refers to such a hearing as a "post-termination" statutory remedy, he could not have been fired prior to the hearing. Cf. Barberic v. City of Hawthorne, 669 F. Supp. 985, 993 (C.D. Cal. 1987) (stating when employee is terminated without due process, "availability of post-deprivation procedures cannot 'cure' the due process violation").

We disagree with the employee that he "was coerced to retire." On the contrary, the supervisor notified him that the supervisor intended to seek his discharge and gave him the opportunity to avoid the disciplinary process. To the extent that the employee argues that "[t]he trial court improperly placed the burden for waiving this alleged adequate remedy at law onto" him, the decision to avoid the disciplinary process was entirely his. He does not allege that he was forced to choose one alternative over the other; to the contrary, he describes the financial considerations upon which he based his decision to retire instead of facing a termination hearing.

2

The employee argues that he was denied due process because he "honestly believed that if he went in front of [the commissioners] he would be publicly fired" and that "he would not receive an impartial review by the Commissioners." As a result, he claims that his "'opportunity' was not a choice at all." The mere fact that the employee believed that he would not prevail at a hearing did not constitute a denial of due process. Thus, his belief was not a material fact. See Bond, 164 N.H. at 213.

To the extent that the employee believed that the commissioners would act improperly, his recourse would have been to seek judicial relief. See Sinkevich v. Nashua, 97 N.H. 262, 264 (1952) ("Although there is no statutory review of the decisions of police commissions in the suspension and removal of its police officers, it has become settled law that certiorari 'is a proper and well established remedy for unlawful removal from office.'"). The employee's reference to exhaustion of administrative remedies is inapposite. Cf. Porter v. City of Manchester, 151 N.H. 30, 41 (2004) (stating exhaustion not required when administrative procedures would not necessarily correct hostile work environment or authorize award of back pay). Because the employee chose to retire rather than to have a termination hearing before the commissioners, whether he received proper notice of such a hearing and whether the commissioners could have found just cause to terminate his employment are moot issues. Batchelder v. Town of Plymouth Zoning Bd. of Adjustment, 160 N.H. 253, 255 (2010) ("The doctrine of mootness is designed to avoid deciding issues that have become academic or dead.").

To the extent that the employee argues that he was unaware that he could not be fired except by the commissioners after a hearing, we note that he was second in command of the police department. Furthermore, employees are presumed to know the law. See Lennartz v. Oak Point Assocs., 167 N.H. 459, 464 (2015) (stating every person is presumed to know the law); cf. Barberic, 669 F. Supp. at 993 (stating no evidence employee was aware of supervisor's unexpressed intent to grant hearing if requested).

The employee's reliance upon Bressler v. Wright, 116 N.H. 238 (1976), and Summers v. Exeter, 114 N.H. 841 (1974), is misplaced. In each of those cases, the employee's statutory right was violated because the employee was terminated by an authority not empowered to do so. Bressler, 116 N.H. at 238-39 (stating employee illegally discharged by town manager and subsequently legally discharged by selectmen, after hearing); Summers, 114 N.H. at 843 (stating RSA 41:48 (1970) required employee to be dismissed by selectmen, after notice and hearing, rather than by town manager).

Viewing the summary judgment record in the light most favorable to the employee, we conclude that the trial court correctly found that the employee was not denied due process under the State Constitution when he elected to retire. Accordingly, we need not address the employee's argument that the trial court

3

erred by not finding that he had a protectable property interest in his continued employment.

Because we conclude that the employee was not denied his state constitutional right to due process, we decline his invitation to "fashion a remedy for him." See Khater v. Sullivan, 160 N.H. 372, 374 (2010) (declining to fashion constitutional tort remedy for racial discrimination in land use regulation because appeal to zoning board of adjustment provided adequate remedy, even though such remedy was not as complete as constitutional tort would provide); Marquay v. Eno, 139 N.H. 708, 722 (1995) (declining to fashion constitutional tort remedy for school officials' failure to stop sexual abuse of students because array of common law remedies was adequate to address equal protection violations, even though such remedies were not as complete as constitutional tort); Rockhouse Mt. Property Owners Assoc. v. Town of Conway, 127 N.H. 593, 598 (1986) (declining to fashion constitutional tort remedy for selectmen's refusal to lay out roads because statutory law provided adequate remedy, even if selectmen's refusal reflected intent to discriminate).

We next address whether the employee was wrongfully discharged for performing an act that public policy would encourage or for refusing to do something that public policy would condemn such that he can maintain an action for wrongful discharge. See Leeds v. BAE Sys., 165 N.H. 376, 379 (2013) (stating elements of wrongful discharge claim). The public policy element of a wrongful discharge claim can be based upon statutory or nonstatutory policy. Id. Although ordinarily the issue of whether a public policy exists is a question for the jury, the absence of a valid public policy may be so clear that a court may rule on the issue as a matter of law. Id. The trial court assumed, without deciding, that the employee's "retirement was coerced and can be considered a termination within the meaning of a wrongful termination claim," and so will we.

To the extent that the employee argues that he "was essentially terminated for complying with a public policy that encourages police officers to tell the truth," we agree with the trial court that the employee was not terminated "for telling the truth, but for his admitted misconduct." To the extent that the employee argues that "if public policy expects a police officer to be truthful, then he is entitled to due process," we conclude that this argument does not address whether the employee faced termination for performing an act that public policy would encourage or for refusing to do something that public policy would condemn.

Accordingly, viewing the summary judgment record in the light most favorable to the employee, we conclude that the trial court did not err in finding that he failed to meet the public-policy element of his wrongful discharge claim.

4

The employee's remaining arguments are either not sufficiently developed, see State v. Blackmer, 149 N.H. 47, 49 (2003), or otherwise do not warrant further discussion, see Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**