Kottmyer, J.
INTRODUCTION
In her Second Amended Complaint (“the Complaint”), plaintiff, Margaret Groppo (“Groppo”) seeks damages from her former employer Courier Corporation (“Courier”) and three Courier executives James F. Conway, III, Thomas Osenton and Diana Sawyer (collectively “the Individual Defendants”). Groppo alleges that Courier enticed her to leave her former job by *567 promising her employment for an annual term, that she would be head of an independent division with profit and loss responsibility and that she would not report to the Sales and Marketing Division. On July 23, 1996, Count II (intentional infliction of emotional distress) and Count IV (negligent infliction of emotional distress) of Groppo’s Second Amended Complaint were dismissed by the Court. Courier and the Individual Defendants have moved for summary judgment on the remaining counts. The plaintiff has moved for summary judgment on Counts I, II, V and VI. At the hearing on the motion, the plaintiff conceded that defendants were entitled to summary judgment on Count II (wrongful termination) and Count VIII (intentional interference with contractual relations). The remaining counts against Courier are as follows: Count I (breach of contract), Count V (fraud), Count VI (promissory estoppel), Count VII (gender discrimination) and Count IX (declaratory judgment). The sole remaining count against the individual defendants is Count V alleging fraud.
Statement of Facts
Viewing the record in the light most favorable to Groppo and indulging all inferences favorable to her, the following facts could reasonably be found. Courier is a printer of Bibles, medical books, textbooks and the like. In the fall of 1992, Courier created an electronic publishing subsidiary called Courier EPIC, Inc. (“EPIC”). EPIC’s four divisions included Courier Consults (“Consults”), which provided consulting services and training to Courier’s customers with in-house electronic publishing operations. In 1993, Annette Douglass became head of EPIC. In the fall of 1993, Courier placed a job advertisement in the Boston Globe for the position of “Director” of Consults. The advertisement recited that the position “will have P/L responsibilities for all aspects of the consulting business unit.” Responsibilities included “prospecting customer opportunities [and] developing and growing a client base.”
By letter dated November 9, 1993, Groppo applied for the position. Groppo had been employed at Xyvision, Inc. (“Xyvision”), a manufacturer of document management software for electronic publishing systems for ten years. Groppo was interviewed for the ■position of Director of Consults by Douglass and Diana Sawyer, Courier’s Vice President of Human Resources. She also met with Osenton who had recently been hired as Courier’s Senior Vice President and Chief Marketing Officer.
During the interviews, Groppo told Sawyer and Douglass that she was interested in the position because, if hired, she would be head of a division with profit and loss responsibility. She stated that she would not leave her present position for a position which did not offer the opportunity to head a division. She expressly stated that she did not want to be part of or report to the Sales and Marketing Division. She said that although accepting the position at Courier entailed a reduction in her total compensation, she was willing to accept a decrease in compensation in return for the opportunity to rise to a new management level.
By letter dated January 11,1994, Courier offered the position of Director of Consults to Groppo. The letter stated that Groppo would have “frill P&L responsibility for Courier Consults.” It identified Groppo’s primary obligations “for Courier Consults fiscal year 1994" which ended on September 24, 1994 and stated her compensation arrangement for fiscal year 1994. It recited that because Groppo would be joining Consults four months into the fiscal year, the budgeted sales targets for the division had been revised for FY 94. It stated that the compensation arrangement would be reviewed in September 1994 and ’’either continued or redesigned based on Business objectives for fiscal year 1995."
Thereafter discussions relating to the compensation package took place and Courier sent a modified offer to Groppo on Januaiy 14, 1994, which added a “cost incentive (bonus) award based upon the achievement of specific Courier EPIC and Courier Consults performance targets.” Negotiations continued and on January 24 and 31, 1994 Courier sent Groppo additional letters modifying the offer by increasing the biweekly salary and bonus. The provision that the bonus was payable at the end of the fiscal year was retained in the modified offers. Payment of the bonus was based on performance targets including delivery and acceptance of a comprehensive business plan in August and achievement of a specified run rate of billings per month by fiscal year end. By letter dated February 2, 1994, Groppo accepted the position. She commenced work on February 28, 1994.
For about one month, Groppo’s position and responsibilities were as described in the advertisement and during the interviews. At the end of March 1994, the defendant James Conway, president of Courier, announced that he had decided to move Consults out of EPIC and into the Sales Division effectively abolishing plaintiffs position as head of a Division with profit and loss responsibility. Meetings ensued, but Conway refused to reconsider the decision. On April 19, 1994, Groppo met with James Conway. At the end of the meeting her employment was terminated. There is a dispute as to whether she resigned or was terminated.
Counts I and VI: Breach of Contract and Promissory Estoppel
Absent agreement that employment will extend for a definite period, employment is at-will. An at-will employee may be fired at any time for any reason or no reason at all. A court will find employment at-will where there is no employment contract, expressed or implied, with a definite period of employment. Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9 (1988). Courier argues that Groppo’s deposition testimony disposes of the allegation that Courier agreed to employ her for a definite term. Groppo testified that she inferred that she had a year-long contract from the fact that her salary was annualized *568 and that in pre-employment discussions Courier’s Douglass “was always talking about yearly performance and yearly targets and yearly review.” She further testified as follows:
Q. Did anyone ever tell you that you had a contract for a year?
A. No.
Q. Anyone ever tell you you couldn’t be terminated from employment except with cause during your first year of employment?
A. No one ever told me that, no.
Groppo Dep. vol. 1, 162-64.[1]
The possibility that a definite term of employment may be implied from other terms of the employment contract requires “a review of the totality of the relationship between the employer and employee to determine whether the relationship is at-will.” Moriearty, Adkins & Lipsitz, Employment Law, 45 Mass. Prac. §2.3 at 42. See Kravetz v. Merchants Distributors, Inc., 387 Mass. 457, 460 (1982) (where terms of agreement relating to duration of employment are neither specific nor clear, jury may consider attendant circumstances, including the nature of the employment, the prior negotiation and the situation of the parties, in determining whether the contract provided employment for a definite time). Thus, the fact that Groppo has acknowledged that there was no express agreement as to employment for a definite term is not dispositive of this motion.
The cases are not uniform as to the quantum of evidence required to create a jury question as to whether there was a contract for a definite term.[2] Compare Mahoney v. Hildreth & Rogers Co., 332 Mass. 496, 499 (1955),[3] and Pollock v. The Art Institute of Boston, 12 Mass.App.Ct. 919, 920 (1981), with Maynard v. Royal Worcester Corset Co., 200 Mass. 1, 4-5 (1908), Tennaro v. Ryder System, Inc., 832 F.Sup. 494, 501 (D.Mass. 1993), and Lowenstein v. President & Fellows of Harvard College, 319 F.Sup. 1096 (D.Mass. 1970). In this case, however, there is evidence relating to the duration of employment, e.g., the structure of the bonus which was to be paid at the end of the fiscal year, which is sufficient to satisfy plaintiffs burden on summary judgment. See also Frederick v. Conagra, Inc., 713 F.Supp. 41, 46 (D.Mass. 1989) (agreement pursuant to which loan to employee would be forgiven after two years of employment supports inference of employment for a definite period, but existence of loan together with annual salary would ordinarily be insufficient to create a contract for a term of years). Granted that in this case, unlike Frederick, there is no evidence that Groppo was told that Courier wanted to hire her for a specific period of time. However, there is evidence of statements made during the interviews and negotiations from which a juiy could find an implied agreement for employment at least through the end of the fiscal year. Further, there is evidence from which a jury could find an independent promise by Courier that, absent events beyond its control, the position for which Groppo was hired (which she had identified as key to her decision to take the job), i.e., head of a division with profit and loss responsibility, would remain as constituted at least through the end of the fiscal year. See McAndrew v. School Committee of Cambridge, 20 Mass. App. 356, 363 (1985). Further, there is evidence that Groppo acted in reliance on that promise to her detriment, i.e„ leaving Xyvison and taking a job at reduced compensation.
The representations made in the negotiations, the existence of an agreement for employment for a specific term or of a promise for employment in a specified position which would continue to exist for a specified period of time and the amount of damages suffered by Groppo are disputed questions of material fact. On this record defendants are not entitled to judgment as a matter of law on either Count I alleging breach of contract or Count VI alleging promissory estoppel.
Count V: Fraud
In Count V, Groppo alleges that Courier and the individual defendants promised that she would be head of Courier Consults, a division of EPIC, that the position would have profit and loss responsibility and that it would not be part of the Sales and Marketing Division. She alleges that she reasonably relied on these promises by leaving her prior position and commencing work at Courier and that less than one month after she did so, Consults was moved out of EPIC and into the Sales Division.
To prove fraud/misrepresentation, Groppo must show that 1) the defendant in question made representations of material fact; 2) which were false when made, 3) for the purpose of inducing her to act; and 4) that she reasonably relied on the misrepresentation to her detriment.[4] Zimmerman v. Kermit, 31 Mass.App.Ct. 72, 77 (1991).
All defendants argue that they are entitled to summary judgment on this count because there is no evidence of knowledge that the statements were false when made. There is no evidence that defendants Osenton and James Conway made representations to Groppo upon which she relied in accepting employment with Courier. They are entitled to summary judgment on this count. See Lyon v. Morphew, 424 Mass. 828 (1997). There is no evidence that Sawyer knowingly made misrepresentations or failed to disclose material facts of which she was aware during her preemployment discussions with Groppo and she is entitled to summary judgment on this count.
The Court cannot find on this record that material facts are not in dispute and Courier is entitled to judgment as a matter of law on Count V. There is evidence that a proposal to make Consults a part of Sales was made and rejected in early 1993. Viewing the evidence in the light most favorable to plaintiff, there is evidence that the transfer was under consideration by Courier’s President James Conway in “the February to March [1994] time frame” (J. Conway Dep. at 47), and *569 that there had been ongoing discussions about “why we would leave [Consults] at EPIC." (Id. at 46-47.) The plaintiff accepted the position on February 2, 1994. Based on Conway’s deposition testimony, a jury could find 1) that the transfer was under consideration at the time the offer was made to Groppo; 2) that, in view of Groppo’s express statements to the effect that she would not accept a position which did not have profit and loss responsibility or a position that reported to the Sales and Marketing Division, Courier had an obligation to disclose the fact that the transfer was under consideration to her; and 3) that she would not have accepted the position had Courier so advised her. Even though a party to a transaction has no duty to provide information on a given subject matter, “if he does speak with reference to a given point of information, voluntarily or at the other’s request, he is bound to speak honestly and to divulge all the material facts bearing upon the point that lie within his knowledge.” Kannavos v. Annino, 356 Mass. 42, 48 (1969) (citations omitted). “Fragmentary information may be as misleading ... as active misrepresentation, and half-truths may be as actionable as whole lies.” Id.
Count VII: Gender Discrimination
In Count VII, Groppo alleges that she was discriminated against on the basis of gender in violation of G.L.c. 151B. She relies on the following facts as evidence that Courier violated G.L.c. 151B:
a) she received a cubicle instead of an office;
b) she had difficulty scheduling meetings with two male managers;
c) she had difficulty getting pricing information from one male manager;
d) the male Director of Technology of EPIC spoke with her in a “superficial manner”;
e) she did not feel accepted and valued at Courier;
f) one male manager used body language to exclude her from conversations held in hallways;
g) sports metaphors were frequently used by men in work discussions and on one occasion she had to wait to have a work-related conversation with a male manager until he finished talking sports with two other men.
Courier has adduced evidence that no offices were available when Groppo began work. Groppo acknowledges that she saw no empty offices at EPIC and that no lower ranked male employee had an office instead of a cubicle, except one individual who was also a head of a division and had been there longer (Groppo Dep. 2-93-2-98,2-110). The remaining “facts" on which she bases her claim for discrimination are too vague and impressionistic, alone or in combination, to support a finding of discrimination. They are “the kind of subjective and intangible impressions that must not be considered in making out a case under the statute.” Bain v. City of Springfield, 424 Mass. 758, 765-66 (1997). See also MacCormack v. Boston Edison Co., 423 Mass. 652, 664 (1996). Further, as a matter of law, the allegations do not describe conduct “severe or pervasive enough to create an objectively hostile or abusive work environment.” Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). Groppo has not adduced facts sufficient to support a finding of disparate treatment based on gender in connection with the termination of her employment. She has not identified any male employees who were treated differently in circumstances sufficiently similar to support an inference that there was disparate treatment based on gender. See Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 129-30 (1997). The defendant’s motion for summary judgment on Count VII alleging gender discrimination is therefore granted.
CONCLUSION
For the reasons stated in the memorandum, judgment shall enter in favor of the defendant Courier on Count II (wrongful termination), Count VII (gender discrimination) and Count VIII (intentional interference with contractual relations). Judgment shall enter in favor of defendants Osenton, Conway and Sawyer on Count V (fraud) and VIII (intentional interference with contractual relations). Courier’s motion for summary judgment on Counts I, VI and IX is DENIED. Plaintiffs cross motion for summary judgment on Counts I, II, V and VI is DENIED because the facts material to her claims are disputed.

 In support other motion for summary judgment, plaintiff relies on an affidavit prepared by her attorney and signed by Douglass in 1995. Douglass had an opportunity to review the affidavit and make changes before signing it. Douglass signed a second affidavit on July 9, 1997, at Courier’s request. In the interim she had entered into a severance agreement with Courier and had agreed to cooperate with Courier in its defense of litigation. The defendants have moved to strike the relevant paragraphs of Douglass’ original affidavit. They assert that because Douglass was an employee of Courier, it was improper for plaintiffs counsel to approach her directly. To the extent that Douglass’ original affidavit contains admissible statements of fact, as opposed to conclusions, concerning her pre-employment conversations with Groppo it adds little, if anything, to Groppo’s deposition testimony. Because there is sufficient evidence to defeat the defendants’ motion for summary judgment apart from any admissible relevant evidence contained in Douglass’ original affidavit, it is not necessary to address the motion to strike.

 The defendant correctly points out that Groppo’s salary is described in the offer letters as an amount to be paid biweekly and then annualized.

 Defendant relies on Schnurbush v. Boston Gas Company, No. 91-159 Essex Sup. Ct. (Nov. 25, 1992), affd No.93-P-161 (Mass.App.Ct. April 6, 1994). In that case, the Court noted that the Supreme Judicial Court in Mahoney did not require that Mahoney’s termination be for just cause. The Supreme Judicial Court had stated, however, that absent evidence that Mahoney was terminated for just cause during the period of the implied contract, he was entitled to recover his salary for the balance of the implied contract term.

 Courier argues that Groppo suffered no damages because she could return to Xyvision. It is undisputed that Groppo worked at Courier for one month at substantially reduced compensation. That is sufficient to survive summary judgment.